**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MUHAMMED ABDULLAH, as an individual and on behalf of all others similarly situated, *Plaintiff-Appellee*, <br><br> v. <br><br> U.S. SECURITY ASSOCIATES, INC., a corporation, *Defendant-Appellant*. | No. 11-55653 <br><br> D.C. No. 2:09-cv-09554-GHK-E <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
George H. King, Chief District Judge, Presiding

Argued and Submitted
March 7, 2013—Pasadena, California

Filed September 27, 2013

Before: Richard A. Paez and Paul J. Watford, Circuit
Judges, and Leslie E. Kobayashi, District Judge.[*]

Opinion by Judge Paez

---

[*] The Honorable Leslie E. Kobayashi, District Judge for the U.S. District
Court for the District of Hawaii, sitting by designation.

## SUMMARY[**]

### Class Certification

The panel affirmed the district court's order under Fed. R. Civ. P. 23 certifying a class of former and current employees of U.S. Security Associates, Inc., who allege that the company committed numerous violations of California labor law.

The panel held that the district court did not abuse its discretion by certifying a meal break sub-class, defined as all past and present employees who worked more than six hours and were not provided a meal break and who were not compensated for the meal break. The panel held that under California law the plaintiffs' claims will yield a common answer that is "apt to drive the resolution of the litigation," as required by Fed. R. Civ. P. 23(a)(2). The panel also held that common issues of law or fact would predominate, and plaintiffs' claims "will prevail or fail in unison," as required by Fed. R. Civ. P. 23(b)(3).

### COUNSEL

Robert J. Stumpf, Jr. (argued), San Francisco, California; Otis McGee, Jr., Ross A. Boughton, Morgan P. Forsey, and Lauren D. Thibodeaux, Sheppard, Mullin, Richter & Hampton LLP, Los Angeles, California, for Defendant-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Kenneth H. Yoon (argued), Los Angeles, California; Peter M. Hart and Amber S. Healy, Los Angeles, California, for Plaintiff-Appellee.

## OPINION

PAEZ, Circuit Judge:

The district court certified a class of former and current employees of U.S. Security Associates, Inc. ("USSA"), who allege that USSA committed numerous violations of California labor law. USSA filed a petition to appeal the district court's certification order, which we granted. *See* Fed. R. Civ. P. 23(f). On appeal, USSA argues that the court erred in certifying the meal break sub-class, because the plaintiffs failed to establish "questions of law or fact common to the class" that "predominate" over questions affecting only individual members. Fed. R. Civ. P. 23(a)(2), (b)(3). We hold that the district court did not abuse its discretion by certifying the meal break sub-class. Accordingly, we affirm.

## I. BACKGROUND

### A.

Plaintiff Muhammed Abdullah is a former employee of USSA, a private security guard company.[1] USSA provides guards at over 700 locations in California, including hotels,

---

[1] In addition to Abdullah, the second amended complaint names three additional plaintiffs: Melissa Robinson, Christina Aguilar, and William Kimbrough. All four were employees of USSA for some period of time between 2007 and 2009.

hospitals, warehouses, and construction sites, among other locations. In addition to standing guard at such locations, USSA's employees may perform a range of other duties, such as inspecting vehicles, patrolling properties, reacting to patient emergencies, clearing off railroad tracks, and recording damage to vehicles, among many other tasks. A large majority of USSA's employees in California work at "single post" locations, meaning that no other guards are on duty at the same time.[2]

As a condition of employment, all of USSA's employees are required to sign "on-duty meal period agreements." The record contains two versions of such agreements. The first, which was used prior to 2007, provides:

> Due to the nature of the work I perform as a Security Guard, and due to the nature of the services provided by U.S. Security Associates, Inc., I understand that my work prevents me from being relieved of all duty during my meal period. I am voluntarily agreeing to have my daily meal period "on duty." I understand that I will be paid at my regular rate of pay for my on duty meal period. I understand that, if I elect to revoke this agreement, I may do so at any time, provided my revocation is in writing.

---

[2] USSA's "person most knowledgeable," Leo J. Flury ("Flury"), initially testified at his deposition that 99.9% of employees work at single guard posts. He later changed his answer to say that "a large majority" of employees work at such posts.

The second, which USSA has used since mid-2007, provides:

> Due to the nature of the work I perform as a Security Guard, and due to the nature of the services provided by U.S. Security Associates, Inc., I understand that I may be prevented from being relieved of duty during my meal period. On this basis, I voluntarily agree to have an "on-duty" meal period that shall be counted as time worked and compensated by U.S. Security Associates, Inc.

After five (5) hours worked, the following waiver becomes relevant:

> Pursuant to paragraph 13 of Wage Order No. 4-2001 of the California Industrial Welfare Commission, Employee and Employer, as evidenced by their respective signatures below, hereby mutually agree to waive the right to an off-duty meal period for any hours worked in excess of five (5) total hours in a workday.
>
> I understand that I may revoke this agreement at anytime in writing, and such revocation shall be presented to my Supervisor or Operations Manager at the beginning of the shift on which I first desire to revoke the agreement. I am voluntarily signing this agreement.

Flury testified that if an employee refuses to sign the "on-duty meal period agreement," he or she "won't work for us."

He further testified that one of the "requirements" of the job, as evidenced by the meal-period "waiver," was for USSA employees to eat meals on the job.

B.

The plaintiffs sought to maintain a class action on behalf of themselves and all others similarly situated, alleging that USSA committed numerous violations of California labor laws, including, *inter alia*, requiring them to work through their meal periods. Of note here, they allege that USSA has a "policy of requiring employees to work through their legally mandated meal periods," and is therefore liable for "paying premium compensation for missed meal periods . . . pursuant to California Labor Code § 226.7 and the applicable [Industrial Welfare Commission] Wage Order."[3]

The district court certified the class and seven sub-classes, pursuant to Rule 23(b)(3). One of the sub-classes is the meal break sub-class, which is defined as:

> A Subclass of all of Defendant's past and present California Security Guard/Officer employees who worked more than six hours and were not provided a checked-out meal break in any work shift from July 1, 2007 through the present, and who were not compensated for such on-duty meal break(s) pursuant to California Labor Code § 226.7(b).

---

[3] The plaintiffs filed their initial complaint in the California Superior Court, and USSA removed the case to federal court pursuant to the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d).

The district court determined that certifying this sub-class was appropriate, "[g]iven [USSA's] uniform policy of requiring the putative subclass members to sign the on-duty meal break agreement," as well as the "evidence that, in the vast majority of cases, this policy was implemented to require on-duty meal breaks be taken."  A few months later, the court reached the same conclusion in an order denying USSA's motion for reconsideration.  Having been granted leave to appeal, USSA challenges the district court's certification of the meal break sub-class on the grounds that the plaintiffs have not established "commonality," as required under Federal Rule of Civil Procedure 23(a)(2), or "predominance," as required under Rule 23(b)(3).

## II. STANDARD OF REVIEW

We review a district court's decision to certify a class under Rule 23 for abuse of discretion.  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (hereinafter *"In re Wells Fargo"*).  "When reviewing a grant of class certification, we accord the district court noticeably more deference than when we review a denial of class certification."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010) (quoting *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008)) (internal quotation marks omitted).  A district court abuses its discretion if it (1) relies on an improper factor, (2) omits a substantial factor, or (3) commits a clear error of judgment in weighing the correct mix of factors.  *In re Wells Fargo*, 571 F.3d at 957.  In addition, an error of law is a per se abuse of discretion.  *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010).  We review the district court's findings of fact under the clearly erroneous standard, meaning we will reverse them only if

they are (1) illogical, (2) implausible, or (3) without "support in inferences that may be drawn from the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009).

## III. ANALYSIS

We are concerned here with two overlapping requirements for class certification. First, a party seeking class certification must always show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).[4] Second, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011); *see also* Fed. R. Civ. P. 23(b). Here, the plaintiffs seek certification under Rule 23(b)(3), which requires, *inter alia*, that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Thus, "Rule 23(a)(2) asks whether there are issues common to the class," and "Rule 23(b)(3) asks whether these common questions predominate." *Wolin*, 617 F.3d at 1172. We begin our analysis by considering whether the plaintiffs have satisfied Rule 23(a)(2), keeping in mind that this analysis is also relevant to Rule 23(b)(3). *See id.* (noting the "substantial

---

[4] This requirement, known as the "commonality" requirement, is one of the four familiar requirements of Rule 23(a): the party seeking class certification must show that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). USSA does not challenge the district court's determination that the meal break sub-class satisfies Rule 23(a)(1), (3), and (4).

overlap between the two tests"). We then turn to Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (explaining that the requirements of Rule 23(a)(2) are "less rigorous than the companion requirements of Rule 23(b)(3)").

### A. Rule 23(a)(2)

"The Supreme Court has recently emphasized that commonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Wal-Mart*, 131 S. Ct. at 2551) (internal alteration omitted). Put another way, the key inquiry is not whether the plaintiffs have raised common questions, "even in droves," but rather, whether class treatment will "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)) (emphasis added) (internal quotation marks and alteration omitted). This does not, however, mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is "a single *significant* question of law or fact." *Mazza*, 666 F.3d at 589 (emphasis added); *see also Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1041–42 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2361 (2013).

Here, the district court concluded that "a common legal question that is presented and susceptible to class-wide determination" is whether California's "nature of the work" exception to Industrial Welfare Commission ("IWC") wage order No. 4-2001 ("Wage Order No. 4-2001")—which

governs meal periods—"applies to [USSA]'s single guard post staffing model."**[5]**  USSA counters that this question will not generate a common answer, because USSA's "nature of the work" defense requires "an individualized, fact-specific analysis" of each employee's work history, including "a day-by-day examination of an employee's job duties."  We therefore begin our Rule 23(a)(2) analysis by looking to state law to determine whether the plaintiffs' claims—and USSA's affirmative defenses—can yield a common answer that is "apt to drive the resolution of the litigation."  *Wal-Mart*, 131 S. Ct. at 2551; *see also Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").  We conclude that they can.

1.

Under California law, an employer may not "require any employee to work during any meal . . . period mandated by an applicable order of the Industrial Welfare Commission."  Cal. Lab. Code § 226.7(a).**[6]**  Wage Order No. 4-2001, in turn, guarantees certain employees a 30-minute meal period for

---

**[5]** Wage Order No. 4-2001 regulates the wages, hours, and working conditions for "professional, technical, clerical, mechanical, and similar occupations."  Cal. Code Regs., tit. 8, § 11040.

**[6]** If the employer does so, it "shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."  Cal. Lab. Code § 226.7(b); *see also* Cal. Code Regs., tit. 8, § 11040, subd. 11(B).

every five hours of work.[7]  Cal. Code Regs., tit. 8, § 11040, subd. 11(A); *see also* Cal. Lab. Code § 512(a) ("An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes.").  The employee must be "relieved of all duty" during this break; if not, the meal period is considered "on-duty," and counts as time worked.  The following three conditions apply to "on-duty" meal periods:

> An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to.  The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

Cal. Code Regs., tit. 8, § 11040, subd. 11(A).  The parties do not dispute that the putative class members all signed a written agreement which provided that it could be revoked; their disagreement turns on whether USSA can defeat class certification by invoking the "nature of the work" exception to the off-duty meal period requirement.  We first consider the substantive scope of duties that may qualify for the "nature of the work" exception, and we then consider two recent state court decisions addressing policies similar to the one in this case.

---

[7] "The IWC's wage orders are to be accorded the same dignity as statutes." *Brinker Rest. Corp. v. Superior Court*, 273 P.3d 513, 527 (Cal. 2012).

a.

The California state courts have not addressed the substantive scope of the "nature of the work" exception.[8] The California Division of Labor Standards Enforcement ("DLSE"), however, has issued several opinion letters addressing when the "nature of the work" exception may apply.[9]  "The DLSE's opinion letters, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Brinker*, 273 P.3d at 529 n.11 (internal quotation marks and citations omitted).  We look to them for guidance on what an employer must show to invoke the exception, as well as examples where DLSE has found that it is satisfied.[10]

---

[8] There are, however, several state court decisions that address whether the "nature of the work" exception can be decided on a class-wide basis under California Code of Civil Procedure § 382; we discuss those cases *infra*.

[9] "The DLSE is the state agency empowered to enforce California's labor laws, including IWC wage orders." *Brinker*, 273 P.3d at 529 n.11 (internal quotation marks and citations omitted).

[10] USSA requests that we take judicial notice of certain documents, including several DLSE Opinion Letters. "To the extent our opinion references any of the materials, we grant [USSA's] request[] for judicial notice." *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824 n.3 (9th Cir. 2011); *see also* Fed. R. Evid. 201(b) (allowing the court to take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

First, DLSE has emphasized that the "on-duty" meal period is a "limited[] alternative" to the off-duty meal period requirement.  DLSE Opinion Letter 2009.06.09 at 8. Critically, it is "not described or defined as a *waiver* of an off-duty meal period," *id.* (emphasis added), but rather as "a *type* of meal period that can be lawfully provided only in those circumstances in which the three express conditions set forth in [the regulation] are satisfied."[11]  *Id.*  Thus,

> [i]n determining whether 'the nature of the work' prevents an employee from being relieved of all duty, [DLSE] starts with the premise that the general requirement for an off-duty meal period is remedial in nature, and any exception to that general requirement must be narrowly construed, so as to avoid frustrating the remedial purpose of the regulation.

DLSE Opinion Letter 2002.09.04 at 2.  The employer has the burden to "establish[] the facts that would justify an on-duty meal period."  *Id.* at 2–3; *see also* DLSE Opinion Letter 2009.06.09 at 7; DLSE Opinion Letter 1994.09.28 at 4 ("In the view of the Division, the onus is on the employer to show that the work involved *prevents* the employee from being relieved of duty.").

---

[11] DLSE Opinion Letter 2009.06.09 concerned IWC Wage Order No. 9-2001, subd. 11(C), Cal. Code Regs., tit. 8, § 11090, subd. 11(C), which applies to the transportation industry.  Subdivision 11(C) contains the same three requirements for any on-duty meal period as Wage Order 4-2001, subd. 11(A), cited in the text, *supra* at 11.

Second, we can characterize the instances in which DLSE has found that the "nature of the work" exception applies into two categories: (1) where the work has some particular, external force that requires the employee to be on duty at all times, and (2) where the employee is the sole employee of a particular employer.[12] For example, in its most recent opinion letter, DLSE concluded that employees who transport hazardous materials, and are required by federal regulation to attend to their vehicles at all times, are covered by the "nature of the work" exception. DLSE Opinion Letter 2009.06.09 at 8. It emphasized the narrow scope of its conclusion, however, explaining,

> [W]e do not comment upon the application of the on-duty meal period requirements for any

---

[12] We do not—and cannot—hold that these are the only circumstances under which the "nature of the work" exception may apply. To the contrary, DLSE has laid out the following non-exhaustive factors that should be considered when deciding whether the "nature of the work" exception applies to a specific job:

> (1) [T]he type of work, (2) the availability of other employees to provide relief to an employee during a meal period, (3) the potential consequences to the employer if the employee is relieved of all duty, (4) the ability of the employer to anticipate and mitigate these consequences such as by scheduling the work in a manner that would allow the employee to take an off-duty meal period, and (5) whether the work product or process will be destroyed or damaged by relieving the employee of all duty.

DLSE Opinion Letter 2009.06.09 at 7. Thus, we make this observation solely to note the broad types of positions that DLSE has determined qualify for the "nature of the work" exception, as part of our limited inquiry into the merits of the plaintiffs' claims.

period of time during which the driver is not engaged in activity that is regulated by the referenced federal regulations . . . . It may indeed be the case that drivers may be provided an off-duty meal period during these times even though they are otherwise prevented by the nature of their work from taking a meal period during times in which they are engaged in activity otherwise governed by the [federal regulations].

*Id.* DLSE further allowed for the possibility that another employee might be able to cover the driver, explaining.

Also, the nature of the work element may not be satisfied under circumstances where the employer may have another qualified representative reasonably available to perform the attending duties required under [federal regulation]. For instance, drivers who transport fuel in and around the Bay Area may likely park their vehicle at one of the Company's yards and leave such vehicle unattended in compliance with federal law in order to take an off-duty meal period. Such a driver would not be entitled to an on-duty meal period if the nature of his or her work did not prevent the driver from being relieved of all duty.

*Id.*[13]  In another opinion letter, DLSE noted that the "nature of the work" exception might apply where the position involves "the continuous operation of machinery requiring monitoring" that is "essential to the business of the employer."  DLSE Opinion Letter 1994.09.28 at 2.

In addition to these jobs, which by their nature require the employee to be present at all times, DLSE has also found that the "nature of the work" exception would apply to an "isolated" gas station "in which only a single employee is present," but only if there was not "another employee employed at the worksite."  DLSE Opinion Letter 2003.11.03 at 3; *see also* DLSE Opinion Letter 1994.09.28 (noting that "the nature of the work" exception might apply where "the employee is the only person employed in the establishment and closing the business would work an undue hardship on the employer").  *Cf.* DLSE Opinion Letter 2002.09.04 at 2–3

---

[13] In the same opinion letter, DLSE also considered whether the truck drivers could be required to "sign a blanket agreement for on-duty meal periods."  *Id.* at 3.  DLSE concluded that they could, but emphasized that "each" on-duty meal period covered by the agreement must independently qualify for the "nature of the work" exception:

> It is the opinion of the Division that the Company and employee may enter into a single agreement *so long as* the conditions necessary to establish that the nature of the employee's work prevents the employee from being relieved of all duty are met for each applicable on-duty meal period taken.

*Id.* at 9 (emphasis added).  Although not dispositive of any issue, DLSE's response supports the plaintiffs' argument that it is unlawful for USSA to impose a uniform policy of requiring "on-duty" meal periods, given USSA's own admission that, "beyond the variation in general duties by post," the guards' day-to-day responsibilities also vary.

(concluding that the "nature of the work" exception does not apply to late-night shift managers at fast-food restaurants, in part because other employees are on duty and could cover for the manager).[14]

b.

With this understanding of the "nature of the work" defense, we turn to two recent state court decisions that guide our analysis of Rule 23(a)(2)'s commonality requirement. First, in *Brinker*, the California Supreme Court clarified multiple "issues of significance to class actions generally and to meal and rest break class actions in particular." 273 P.3d at 520. Of particular importance here, the court in *Brinker* held that the California Court of Appeal had erred in reversing the superior court's certification of a class of

---

[14] USSA argues that the district court applied the wrong legal standard because it initially cited one of the DLSE opinion letters for the proposition that "an off-duty meal period must be provided unless . . . the nature of the work makes it virtually impossible for the employer to provide the employee with an off-duty meal period." DLSE Opinion Letter 2002.09.04 at 2. As USSA correctly argues, DLSE has rejected the "virtually impossible" standard as "narrow, imprecise, and arbitrary." DLSE Opinion Letter 2009.06.09 at 7.

We disagree that the district court applied the wrong legal standard. As an initial matter, the district court did not "apply" any legal standard; it merely looked to the DLSE opinion letters as part of its preliminary inquiry into the merits, to determine whether class certification was appropriate. Furthermore, the district court clarified its initial ruling when it denied USSA's motion for reconsideration, explaining that its previous citation to the "virtually impossible" standard "was not determinative in [its] analysis," and that the "analytical role" it played "was merely to express that the showing necessary to establish the 'nature of the work' exception is a high one." We are therefore satisfied that the district court applied the correct legal standard.

plaintiffs who alleged that their employer uniformly denied them rest breaks. Although the court's analysis arose in the context of a representative action under California Code of Civil Procedure § 382, it also spoke to the liability that would arise under such a scenario:

> [T]he Court of Appeal concluded that because rest breaks can be waived—as all parties agree—"any showing on a class basis that plaintiffs or other members of the proposed class missed rest breaks or took shortened rest breaks would not necessarily establish, without further individualized proof, that Brinker violated" the Labor Code and Wage Order No. 5. This was error. An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry. *If it does not—if, for example, it adopts a uniform policy authorizing and permitting only one rest break for employees working a seven-hour shift when two are required—it has violated the wage order and is liable. . . .*

> . . . The theory of liability—that Brinker has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment.

*Id.* at 531–32 (emphasis added).

The California Court of Appeal subsequently interpreted and applied *Brinker* in a case with strikingly similar facts to the case before us.  *See Faulkinbury v. Boyd & Assocs.*, 216 Cal. App. 4th 220 (2013).  In *Faulkinbury*, the putative class was made up of private security guards whose employer "had a uniform policy of requiring all security guard employees to take paid, on-duty meal breaks and to sign an agreement by which the employee agreed" to such on-duty meal breaks.  *Id.* at 233.  The court of appeal concluded that the employee's liability turned on "the issue [of] whether Boyd's policy requiring all security guard employees to sign blanket waivers of off-duty meal breaks is lawful," *id.* at 234, explaining,

> *Brinker* leads us . . . to conclude Boyd would be liable upon a determination that Boyd's uniform on-duty meal break policy was unlawful . . . . *[T]he employer's liability arises by adopting a uniform policy that violates the wage and hour laws*.  Whether or not the employee was able to take the required break goes to damages . . . .

*Id.* at 235 (emphasis added).**[15]**  The court of appeal explicitly rejected the defendant's argument that the "nature of the work" exception applied, concluding that, "by requiring blanket off-duty meal break waivers in advance from *all* security guard employees, regardless of the working conditions at a particular station," the defendant itself "treated the off-duty meal break issues on a classwide basis." *Id.* at 234; *see also Bradley v. Networkers Int'l, LLC*, 150 Cal. Rptr. 3d 268, 284–85 (Cal. Ct. App. 2012), *as modified on denial of reh'g* (Jan. 8, 2013) ("The lack of a meal/rest break policy and the uniform failure to authorize such breaks are matters of common proof."), *review denied* (Mar. 20, 2013); *Bufil v. Dollar Fin. Grp., Inc.*, 76 Cal. Rptr. 3d 804, 811 (Cal. Ct. App. 2008) (concluding that the plaintiff's theory that "two circumstances—single employee on duty or providing training—do not come within the 'nature of the work' exception" was "a legal question" that could be resolved on

---

**[15]** The court of appeal had initially affirmed an order denying class certification, holding that "individual issues of fact [would] predominate," because "the ability of each of [the] security guard employees to take an off-duty meal break depended on individual issues," such as the specific post to which the employee was assigned, as well as "whether under the specific circumstances each employee could be relieved to take a meal break." *Faulkinbury v. Boyd & Assocs. (Faulkinbury I)*, 112 Cal. Rptr. 3d 72, 87 (Cal. Ct. App. 2010), *review granted and opinion superseded*, 240 P.3d 1215 (Cal. 2010). However, the California Supreme Court subsequently ordered the court of appeal to "vacate its decision and to reconsider the cause" in light of *Brinker*, 273 P.3d 513. *Faulkinbury v. Boyd & Associates, Inc.*, 279 P.3d 1019 (Cal. 2012). Upon reconsideration, the court of appeal reversed the superior court's denial of class certification, as discussed above. The California Supreme Court denied a petition for review and request for de-publication on July 24, 2013. *See* California Courts, Appellate Courts Case Information, http://appellatecases.courtinfo.ca.gov/search/case/disposition.cfm?dist= 0&doc_id=2048870&doc_no=S211515 (last visited September 2, 2013).

a class-wide basis). Of course, we are not bound by the California Court of Appeal's determination under California law that the sub-class certified by the district court is amenable to class-wide treatment. *See* Cal. Civ. Proc. Code § 382. However, insofar as *Faulkinbury* interprets *Brinker*'s holding regarding the potential *liability* of an employer under California law, it is directly on point for our analysis.

2.

In light of these state authorities, we conclude that the plaintiffs' claims will yield a common answer that is "apt to drive the resolution of the litigation," as required by Rule 23(a)(2). *Wal-Mart*, 131 S. Ct. at 2551. First, as the district court explained, the DLSE letters make clear that "the showing necessary to establish the 'nature of the work' exception is a high one." In order to make such a showing, USSA had to demonstrate not just that its employees' duties varied, but that they varied to an extent that some posts would qualify for the "nature of the work" exception, while others would not. It failed to do so. Indeed, USSA's sole explanation for why it requires on-duty meal periods is that its guards are staffed at single-guard locations. It does not argue that any particular posts would qualify for the "nature of the work" exception *absent* the single-guard staffing model. In fact, when asked if he could think of "examples" where "the nature of the work requires an on-duty meal break," Flury testified that he could not.[16] Thus, the crux of the issue is that the class members' duties do not allow for a

---

[16] The only example of a site that "requires[] an on-duty meal break" that Flury could identify was a union site, since USSA "follow[s] some of the[] union rules just to parallel them."

meal break *solely because* no other guards are available to cover for them during their meal periods.

Consider, for example, the illustrative list of duties that USSA has provided to demonstrate the variety of its employees duties:

> [T]he duties performed by security guards include patrolling parking lots; checking receipts; signing in and out trucks; setting up school parking lots and assisting with student drop-offs and pick-ups; inspecting vehicles; restraining unruly patients; escorting dead bodies; checking the inventory, mileage, and temperature of trucks; working undercover to catch shoplifters; monitoring psychiatric patients; checking in employees and answering phones at a front desk; performing surveillance; and enforcing hotel quiet hours.

These duties are undoubtedly distinct from one another, but the only reason any of them "prevent" the employee from taking a meal period is because USSA has chosen to adopt a single-guard staffing model. *See* Cal. Code Regs., tit. 8, § 11040, subd. 11(A) (stating that an "on-duty" meal period is permitted "only when the nature of the work *prevents* an employee from being relieved of all duty" (emphasis added)).[17]

---

[17] In this way, the duties of USSA's employees are distinct from, for example, a truck driver who is required by federal regulation to attend to his vehicle at all times, DLSE Opinion Letter 2009.06.09 at 7–8, or a worker whose job involves the "continuous operation of machinery requiring monitoring," DLSE Opinion Letter 1994.09.28 at 2.

On this basis, we conclude that the merits inquiry will turn on whether USSA is permitted to adopt a single-guard staffing model that does not allow for off-duty meal periods—namely, whether it can invoke a "nature of the work" defense on a class-wide basis, where the need for on-duty meal periods results from its own staffing decisions. Such an inquiry is permissible under *Brinker* and *Faulkinbury*; the latter clarified that an employer may be held liable under state law "upon a determination that [its] uniform on-duty meal break policy [is] unlawful," with the "nature of the work" defense being relevant only to damages. *Faulkinbury*, 216 Cal. App. 4th at 235. Thus, the legality of USSA's policy is a "significant question of law," *Mazza*, 666 F.3d at 589, that is "apt to drive the resolution of the litigation" in this case, *Wal-Mart*, 131 S. Ct. at 2551. We therefore hold that the district court did not abuse its discretion in concluding that Rule 23(a)(2) was satisfied.

## B. Rule 23(b)(3)

We next turn to Rule 23(b)(3), which asks if "the questions of law or fact common to class members *predominate* over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3) (emphasis added). Although there may be "*some* variation" among individual plaintiffs' claims, *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (emphasis added), "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). "A principal purpose behind Rule 23 class actions is to promote efficiency and economy of litigation." *In re Wells Fargo*, 571 F.3d at 958 (internal quotation marks omitted). Thus, "[t]he predominance

analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case," and tests whether the proposed class is "'sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.*, 08-55483, 2013 WL 4712728 at * 5 (9th Cir. Sept. 3, 2013) (quoting *Hanlon*, 150 F.3d at 1022). Here, we conclude that it is.

1.

First, our analysis of the "nature of the work" exception, *supra*, drives our conclusion that Rule 23(b)(3) is satisfied here. *Cf. Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011) ("Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."). We have concluded that the "nature of the work" defense can, and will, be applied on a class-wide basis in this case. We offer no opinion on whether USSA's "single-guard" staffing model will qualify for the "nature of the work" exception.[18] But "Rule 23(b)(3) requires [only] a showing that questions common to the class

---

[18] Indeed, the DLSE opinion letters do not provide a definite metric for deciding in what circumstances a lone employee may be permitted to take an on-duty meal break—for example, it is not clear if an employee must be (1) the sole employee *on duty* at a particular time, (2) the sole employee staffed at a particular *location*, or (3) the sole employee *working for the employer* in order to qualify for the "nature of the work" exception. *Cf.* DLSE Opinion Letter 2003.11.03 (concluding that the "nature of the work" exception would apply to an "isolated" gas station with "a single employee," but not if "another employee [is] employed at the worksite"); DLSE Opinion Letter 1994.09.28 (explaining that the "nature of the work" exception might apply where "the employee is the only person employed in the establishment and closing the business would work an undue hardship on the employer").

predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc.*, 133 S. Ct. at 1191 (emphasis removed); *see also United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (holding that the district court "abused its discretion by declining certification based on the possibility that plaintiffs would not prevail on the merits on their 'on duty' theory," where the plaintiffs' theory was that certain restrictions on their meal breaks made the meals "on duty" under California law (emphasis removed)). And where, as here, "there are no relevant distinctions between the worksites," we agree with the district court that "the 'nature of the work' inquiry would be a common one," focused on the legality of a single-guard staffing model, "rather than a site-by-site" inquiry. Viewing the meal break sub-class' claims in this manner undercuts USSA's primary argument that individual issues will predominate due to its need to present an individual "nature of the work" defense for each plaintiff and each worksite.

## 2.

We are mindful that it is an abuse of discretion for the district court to rely on uniform policies "to the near exclusion of other relevant factors touching on predominance." *In re Wells Fargo*, 571 F.3d at 955; *see also Wang*, 2013 WL 4712728 at *5; *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009). Thus, in *In re Wells Fargo*, we held that the district court had abused its discretion when it certified a class of home mortgage consultants ("HMCs"), all of whom Wells Fargo had classified as "exempt from overtime laws," under Rule 23(b)(3). 571 F.3d at 955. The district court in *In re Wells*

*Fargo* had found that it would need to analyze "the job experiences of the individual employees, including the amount of time worked by each HMC, how they spend their time, where they primarily work, and their levels of compensation," but nevertheless decided that the uniform exemption policy "weigh[ed] heavily in favor of class certification." *Id.* at 956. We held that it was an abuse of discretion for the district court to rely on the "blanket exemption policy," which "[did] nothing to facilitate common proof," since the court would still have to consider how "individual employees *actually* spent their time" in order to decide if they were exempt from overtime requirements. *Id.* at 959 (emphasis added); *see also id.* at 957 (explaining that a district court abuses its discretion when it makes "a clear error of judgment in placing too much weight on [a] single factor *vis-a-vis* the individual issues"). We reached the same conclusion in two other cases that required the district court to consider whether individual employees were properly classified as "exempt" employees. *See Wang*, 2013 WL 4712728 at *5 (noting that "the district court's conclusion that common questions predominate in this case rested on the fact, *considered largely in isolation*, that plaintiffs are challenging CDN's uniform policy of classifying all reporters and account executives as exempt employees," and vacating the district court's finding of predominance under Rule 23(b)(3) (emphasis added)); *Vinole*, 571 F.3d at 945 (affirming the district court's denial of class certification where the court's exemption analysis would be "fact-intensive" and require an "individualized analysis of the way each employee actually spends his or her time").

This case is not like *In re Wells Fargo*, *Wang*, or *Vinole*. First, unlike in those cases, federal or state exemption classifications—which may sometimes be fact-intensive—are

not at issue here.  *Cf. In re Wells Fargo*, 571 F.3d at 959 (explaining that the "federal outside salesperson exemption" often "requires 'a fact-intensive inquiry into each potential plaintiff's employment situation'" (quoting the district court)); *Vinole*, 571 F.3d at 945 (explaining that under California law, "a court evaluating the applicability of the outside salesperson exemption *must* conduct an individualized analysis of the way each employee actually spends his or her time," and the court's "analysis of the FLSA exemption" is likewise "a fact-intensive inquiry" (emphasis added)).

Second, unlike in *Wells Fargo* and *Vinole*, the district court did not rely on the existence of USSA's uniform on-duty meal period policy to the *exclusion* of other factors.  To the contrary, the district court found that nearly all of the evidence in the record—including Flury's testimony about USSA's actual business practices, as well as the declarations of USSA's employees—supports a finding that common questions would predominate.  For example, the court found that Flury's testimony described "more than a policy," since he also explained how USSA's "policies and practices are implemented on the ground."  In considering the employee declarations, the court found that "[n]one of these declarations establishes that the declarant was categorically given off-duty meal breaks."  And, "[g]iven the uniform policy of requiring . . . the on-duty meal break agreement," the court further found that, "in the vast majority of cases, this policy was implemented to require [that] on-duty meal breaks be taken." In light of these findings, the district court properly concluded that the employee declarations "did not indicate a lack of predominance."

USSA nevertheless challenges the district court's factual findings, particularly with regard to the employee declarations. USSA argues that it staffs its guards in groups "ranging from one guard per shift to up to 30 guards per shift and practically everything in between." It further argues that "at many locations, 'off-duty' meal periods were provided." But these arguments directly contradict the statements that Flury made during his deposition. Flury testified to three critical facts. First, he initially testified that 99.9% of employees work at single guard posts (he later changed his answer to say that "a large majority" of employees work at such posts).[19] Second, Flury testified that no single guard post allowed for a lunch break. ("I don't know of any single post that has a lunch break as part of the program."). Third, Flury made clear that such "on-duty" meal periods are required as a matter of policy—not necessity—explaining that one of the "requirements as signed to by the wavier" was for the guards to eat lunch at their posts. In fact, when asked if one USSA employee could relieve another for a meal period, Flury responded, "[b]ut then [the employee] wouldn't be doing his job, would he? No."[20]

We agree with the district court that although USSA "may wish to distance itself from Flury's statements, his admissions were material and [are] properly before us." Furthermore, to the extent the employee declarations submitted by USSA are

---

[19] We note that, although Flury changed some of his answers by errata, he did not change his statement that USSA's business is "all made up of single posts."

[20] As discussed *supra*, Flury stated in his deposition that the on-duty meal period was part of the "nature of the *business*," but when asked for an example where "the nature of the *work* requires an on-duty meal break," he could not think of one, other than a union site.

not entirely consistent with Flury's testimony, we defer to the district court's decision to weigh his testimony over the employee declarations.  We cannot say, in light of all the evidence, that the district court's findings of fact were "illogical," "implausible," or "without support in inferences that may be drawn from the facts in the record." *See Hinkson*, 585 F.3d at 1262.  The district court here did not abuse its discretion by finding, on the record before it, that common issues of law or fact would predominate.

3.

Finally, USSA argues that individual issues will predominate because USSA's "time records will not dispositively show which meal periods were 'off duty' meal periods" for any given employee.  As a factual matter, however, USSA's argument is again belied by the record. Many of the employee declarations describe keeping records of their time worked.  And, as the district court noted, "given Flury's admission that those staffed at single guard posts were required to take on-duty meals, Defendant's records of each employee's clock-in and clock-out times, how much he was paid, and whether he was staffed at a single guard post, can be used to extrapolate whether his meal break was on- or off-duty."  For example, Flury testified that "for on-duty meal breaks, the sign-in sheets would just have a start time and end time."  In light of these records, it would not be difficult to determine USSA's liability to individual plaintiffs, nor would it be overly-burdensome to calculate damages.

For the foregoing reasons, we conclude that the plaintiffs' claims "will prevail or fail in unison," as required by Rule 23(b)(3).  *See Amgen Inc.*, 133 S. Ct. at 1191.  The district

court did not abuse its discretion in concluding that Rule 23(b)(3) was satisfied.

## IV. CONCLUSION

In sum, we conclude that the district court did not abuse its discretion by certifying the meal break sub-class.

**AFFIRMED.**