BYBEE, Circuit Judge,
dissenting:
This case arises out of serious constitutional violations throughout California’s prison system. Brown v. Plata, — U.S. -, 131 S.Ct. 1910, 179 L.Ed.2d 969 (2011). The complexity of the case notwithstanding, the sole issue before our panel is nominally procedural. The Prison Litigation Reform Act (“PLRA”) provides that “[t]he court shall promptly rule on any motion to modify or terminate prospective relief in a civil action with respect to prison conditions.” 18 U.S.C. § 3626(e)(1). If the district court has not “promptly rule[d]” before the 30th day after the filing of such a motion, the district court’s injunction is automatically stayed. Id. § 3626(e)(2). For good cause, the district court may postpone the effective day of the automatic stay, up to 60 days. Id. § 3626(e)(3). The question presented here is: May the district court avoid the statute’s strict timetable by requiring the State to give 120 days’ notice before it files a motion to terminate? To ask the question is to answer it. The answer is plainly “no.”
I respectfully dissent.
I
“[Ojne of the purposes of the [PLRA] was to restrict severely the intrusion of the judiciary into the operation of prisons.” Plata v. Schwarzenegger, 603 F.3d 1088, 1095 (9th Cir.2010). For this reason, the PLRA provides that prospective relief “shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.” 18 U.S.C. § 3626(a)(1)(A). Accordingly, a district court may not grant prospective relief with respect to prison conditions “unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive *1081 means necessary to correct the violation of the Federal right.” Id.; see also id. § 3626(b)(2).
In addition, the PLRA provides standards and timetables by which prospective relief may be terminated. There are two relevant provisions here. First, § 3626(b)(1) sets dates by which prospective relief becomes terminable:
In any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or inter-vener—
(i) 2 years after the date the court granted or approved the prospective relief;
(ii) 1 year after the date the court has entered an order denying termination of prospective relief under this paragraph; or
(iii) in the case of an order issued on or before the date of enactment of the [PLRA], 2 years after such date of enactment.
Id. (emphasis added). As the verb “shall” indicates, this statutory timetable is mandatory. See Alabama v. Bozeman, 533 U.S. 146, 153, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001) (“The word ‘shall’ is ordinarily the language of command.” (internal quotation marks and citation omitted)); Our Children’s Earth Found. v. EPA, 527 F.3d 842, 847 (9th Cir.2008) (“When Congress specifies an obligation and uses the word ‘shall,’ this denomination usually connotes a mandatory command.”). “Thus, any prospective relief becomes terminable, at the latest, two years after its imposition.” Gilmore v. California, 220 F.3d 987, 999 (9th Cir.2000).
Second, the PLRA accelerates rulings on motions for termination. Specifically, the PLRA provides that district courts “shall promptly rule” on such motions and authorizes mandamus relief for failure to do so. 18 U.S.C. § 3626(e)(1). What is more, injunctive relief is automatically stayed 30 days after the filing of a motion to terminate, subject only to a 60-day postponement for “good cause.” Id. § 3626(e)(2), (3). This automatic stay provision acts as an enforcement mechanism on district courts to ensure prompt rulings on motions for termination.[1] Finally, the PLRA contains an immediate appeal provision. Section 3626(e)(4) states that “[a]ny order staying, suspending, delaying, or barring the operation of the automatic stay” imposed by § 3626(e)(2) “shall be appealable” pursuant to 28 U.S.C. § 1292(a)(1).
II
On February 12, 2013, the State represented to the district court that it was considering filing a motion to terminate. In response, plaintiffs requested that discovery be reopened to allow them to investigate current conditions in California’s prison system in anticipation of the State’s motion to terminate prospective relief. The district court granted plaintiffs’ request and ordered the State to disclose its expert witnesses and their reports at least 120 days before it filed a motion to terminate. In the district court’s view, it would be fundamentally unfair to give the State unlimited time to prepare its motion to *1082 terminate while allowing plaintiffs only the time allowed by the PLRA’s automatic stay to prepare their opposition in such a complex case. The State promptly sought relief from this court.
The district court’s order violates the plain and unambiguous command of the PLRA that all prospective relief orders “become[] terminable, at the latest, two years after [their] imposition.” Gilmore, 220 F.3d at 999; see also Berwanger v. Cottey, 178 F.3d 834, 838 (7th Cir.1999) (“What subsection (b)(1) does is identify a class of cases that are eligible for termination: that is, cases in which a district court must entertain motions to terminate prospective relief.”). Congress did not carve out any exceptions to this mandate, not even for complex cases involving large prison systems. The State therefore had the right to move for termination at any point 2 years after relief was entered. 18 U.S.C. § 3626(b)(l)(i). More than a decade after relief was first entered, however, the district court stripped the State of its right to move for termination and, contrary to the express provisions of the statute, imposed an additional 120-day waiting period in the name of fairness.
Furthermore, the district court’s concerns regarding the expedited timetable for the termination of prospective relief cannot justify a departure from the statute’s clear mandate. The PLRA imposes an automatic stay on injunctive relief 30 days after the filing of a motion to terminate to ensure that district courts rule promptly on such motions. 18 U.S.C. § 3626(e)(2). For good cause, however, the district court may postpone the effective date of the automatic stay for up to an additional 60 days. Id. § 3626(e)(3). Good cause presumably exists in unusually complex cases like this one. Accordingly, there is no reason to go beyond the statute in search of fairness. Congress has already weighed the competing interests and has struck what it believes to be the appropriate balance.
The purpose and effect of the district court’s order is to delay the operation of the automatic stay. See id. § 3626(e)(2), (3), (4). As the Supreme Court has explained, however, “[v]iewing the automatic stay provision in the context of § 3626 as a whole [ ] confirms that Congress intended to prohibit federal courts from exercising their equitable authority to suspend operation of the automatic stay.” Miller, 530 U.S. at 338, 120 S.Ct. 2246. Thus, the order is flatly inconsistent with the PLRA, both text and spirit.
Ill
The majority rationalizes the district court’s order by arguing that it is “consistent with [the district court’s] broad authority to manage complex litigation.” Maj. Op. at 1077. In fact, the majority says, the order is based not “on an interpretation of the statute, but [rather on] the circumstances of this case.” Maj. Op. at 1077.
The Supreme Court addressed this argument in Miller v. French. There, two circuits had ruled that federal courts, “in the exercise of their traditional equitable authority, [could] enjoin operation of the PLRA’s automatic stay provision.” 530 U.S. at 336, 120 S.Ct. 2246. The Court rejected these rulings:
To allow courts to exercise their equitable discretion to prevent the stay from “operating” during this statutorily prescribed period would be to contradict § 3626(e)(2)’s plain terms. It would mean that the motion to terminate merely may operate as a stay, despite the statute’s command that it “shall” have such effect....
Viewing the automatic stay provision in the context of § 3626 as a whole [ ] confirms that Congress intended to pro- *1083 Mbit federal courts from exercising their equitable authority to suspend operation of the automatic stay.
Id. at 388, 120 S.Ct. 2246. Significantly, the Court observed that “curbing the equitable discretion of district courts was one of the PLRA’s principal objectives.” Id. at 339, 120 S.Ct. 2246. Where a statutory scheme makes it clear that a court “has no authority to create equitable exceptions to jurisdictional requirements,” the “use of the ‘unique circumstances’ doctrine is illegitimate.” Bowles v. Russell, 551 U.S. 205, 214, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007).
Next, the majority asserts that “nothing in the text of the PLRA prevents the district court from setting a schedule for expert disclosures.” Maj. Op. at 1077. I agree that the PLRA does not expressly forbid district courts from setting discovery schedules, but the point is irrelevant. By compelling district courts to adhere to a strict timetable, the PLRA forbids them from adopting a rule or procedure or schedule inconsistent with its statutory mandate.[2] We expect district courts to exercise their authority and judgment to manage complex litigation, but they must do so within the PLRA’s parameters.[3] Just because district courts have broad discretion to manage cases does not mean that they may exercise that discretion in derogation of the United States Code or the Federal Rules of Civil Procedure. Indeed, the essence of an abuse of discretion is for the district court to exercise its discretion in the face of a contrary rule of law. See Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (“A district court by definition abuses its discretion when it makes an error of law.”); Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 956 (9th Cir.2013) (“[A]n error of law is a per se abuse of discretion.”).
In addition, the majority emphasizes that the State did not file a motion to termmate 2 years after relief was entered, that a motion filed at that time likely would have been futile, and that the State is not ready to file its motion even now. Maj. Op. at 1076-77. This line of reasoning loses sight of the issue before us. We are not reviewing the timing or merit of the State’s motion at this juncture; we are reviewing the district court’s order that the State give 120 days’ notice before it files any motion to terminate. In my view, the likely futility of filing a motion years ago and the readiness of the State to file today are irrelevant to the question of whether the district court’s order violated the PLRA. And on that issue, the analysis is clear: the PLRA does not allow district courts to extend the mandatory timetable for the filing of motions to terminate prospective relief, as did the district court’s order here.
Finally, the majority contends that the State has not triggered the automatic stay provision’s 30-day clock because it has not *1084 yet filed a motion to terminate prospective relief. Maj Op. at 1078. That is correct as far as it goes, but blaming the State for failing to trigger the 30-day clock ignores the fact that the district court has intervened to delay the triggering event itself. The federal courts cannot circumvent congressional intent so easily. Thus, although I agree with the majority that the 30-day clock is not yet ticking, I nonetheless would conclude that the district court’s order delays the operation of the automatic stay.[4] Were it not so, a district court could simply prohibit all motions to terminate and evade the operation of the automatic stay entirely.[5]
IV
As courts of law, we are frequently called upon to enforce timetables prescribed by statute or rule. Sometimes these are jurisdictional. See, e.g., Bowles, 551 U.S. at 208-15, 127 S.Ct. 2360 (enforcing 28 U.S.C. § 2107’s deadline for filing an appeal even though the petitioner had filed his notice within the extended period granted by the district court). Sometimes they are not. See, e.g., United States v. Luk, 859 F.2d 667, 669 n.2 (9th Cir.1988) (denying as untimely a motion for limited remand). We do not hesitate, notwithstanding our concerns with separation of powers or federalism, to enforce statutory deadlines against the executive branch or against state entities. See, e.g., Citizens for Responsibility & Ethics in Wash. v. FEC, 711 F.3d 180, 190 (D.C.Cir.2013) (enforcing against the FEC a 20-day deadline for making and communicating a “determination” in response to a FOIA request); Withrow v. Concannon, 942 F.2d 1385, 1387 (9th Cir.1991) (holding that state agency must strictly comply with federal regulations requiring administrative action within 90 days from the date a hearing is requested).
And, although less common, Congress sometimes has imposed strict deadlines on us as well. See, e.g., 28 U.S.C. § 1453(c)(2), (3) (requiring the courts of appeals to “complete all action on [review of a remand order under CAFA], including rendering judgment, not later than 60 days after the date on which such appeal was filed” unless “all parties to the proceeding agree to such extension, for any period of time” or “such extension is for good cause shown and in the interests of justice, for a period not to exceed 10 days”). We don’t like it, but we have nevertheless self-enforced such deadlines, even when we have been tempted to extend the deadline because of “circumstances.” See Lewis v. Verizon Commc’ns, Inc., 627 F.3d 395, 398 (9th Cir.2010) (“[A]n appeal must be decided within 60 days after it is filed. 28 U.S.C. § 1453(c)(2). Hence, we are required to decide this appeal no later than November 22, 2010, 60 days after the petition for appeal was granted.”); Lowdermilk v. U.S. Bank Nat'l Ass’n, 479 F.3d 994, 996-97 (9th Cir.2007) (granting ourselves the 10-day extension for “good cause,” but noting that one of the parties refused to grant the court any further *1085 extension), overruled on other grounds by Standard Fire Ins. Co. v. Knowles, — U.S. -, 133 S.Ct. 1345, 1350, 185 L.Ed.2d 439 (2013).
Sometimes we have exercised our discretion to extend statutory or regulatory deadlines when we have felt that tolling or some other equitable principle has demanded it. See, e.g., Wong v. Beebe, 732 F.3d 1030, 1033 (9th Cir.2013) (en banc) (holding that equitable tolling of the statute of limitations is available in FTCA actions); Avagyan v. Holder, 646 F.3d 672, 679 (9th Cir.2011) (finding that petitioner may obtain equitable tolling during periods when he is prevented from filing a motion to reopen removal proceedings “because of a deception, fraud, or error, as long as petitioner acts with due diligence” (internal quotation marks and citation omitted)); Bills v. Clark, 628 F.3d 1092, 1099-1100 (9th Cir.2010) (articulating a two-part test to determine whether a mental impairment amounts to an “extraordinary circumstance” warranting equitable tolling under AEDPA). But there is no room in this statute for an equitable argument. Congress has made it plain that the State may file its motion to terminate after 2 years, that the district court “shall promptly rule” on the State’s motion, and that the State’s motion “shall operate” as an automatic stay after 30 days until the district court enters its final order ruling on the motion. 18 U.S.C. § 3626(e)(1). Congress’s decision to impose such strict deadlines may well affect the substantive arguments that counsel will be able to make in defense of the injunction, but that is a consequence of Congress’s choices and is not avoidable by the exercise of our discretion.
V
Absent statutory interference, district courts have broad discretion in managing their eases. But here, the PLRA decrees that all prospective relief orders become terminable, at the latest, 2 years after their imposition. Not 2 years and 1 day, and certainly not 2 years and 120 days, as required by the district court’s order and upheld by the majority today. I respectfully dissent.

. The automatic stay does not permanently dissolve the injunction. Instead, it stays the injunction "during a fixed period of time, i.e., from 30 (or 90) days after the motion is filed until the court enters a final order ruling on the motion.” Miller v. French, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000). As soon as the district court makes written findings based on the record that prospective relief remains necessary, extends no further than necessary, and is narrowly drawn, the automatic stay is lifted. 18 U.S.C. § 3626(b)(3).

. The majority also states that the Federal Rules of Civil Procedure require pretrial disclosure of expert witnesses and reports. Maj. Op. at 1077-78. I agree with that statement but fail to see its significance in this case. Yes, Federal Rule of Civil Procedure 26(a)(2) requires expert disclosures, but it does not mandate their timing here. There is no conflict between Rule 26(a)(2) and the PLRA. Rule 26(a)(2) cannot possibly justify the district court’s variance from the PLRA’s mandatory timetable.

. In this case, for example, the district court was free to set a schedule for expert disclosures during the 2-year period after the consent decree was entered. Now that the 2-year period has passed, however, the PLRA prevents the district court from setting a schedule for expert disclosures if that schedule prevents the State from filing its motion at the time of its choosing. 18 U.S.C. § 3626(b)(1).

. Accordingly, unlike the majority, I would review this appeal under 18 U.S.C. § 3626(e)(4) ("Any order ... delaying ... the operation of the automatic stay ... shall be treated as an order refusing to dissolve or modify an injunction and shall be appealable pursuant to section 1292(a)(1) of title 28, United States Code, regardless of how the order is styled.”), rather than as an exercise of our mandamus jurisdiction under the All Writs Statute, 28 U.S.C. § 1651. Maj. Op. at 1075-76; see 18 U.S.C. § 3626(e)(1) (authorizing an action in mandamus).

. Plaintiffs argue that the district court’s order is necessary to protect their due process right to an opportunity to fully and adequately prepare a response to the State’s motion to terminate. The majority has not addressed the issue. It seems like a stretch. See Gilmore, 220 F.3d at 1008 ("No circuit court has found the PLRA to violate due process.”).