**Kim ALLEN, et al., Plaintiff,**

v.

**HYLAND'S INC., et al., Defendants.**

**No. CV 12–01150 DMG (MANx).**

United States District Court,
C.D. California.

Signed Aug. 1, 2014.

Alexis M. Wood, Beatrice Skye Resendes, Erin Joan Minelli, Ronald A. Marron, San Diego, CA, Gabriel Barenfeld, Gretchen M. Nelson, Stuart R. Fraenkel, Los Angeles, CA, for Plaintiff.

Matthew Marshall Gurvitz, Stephanie Anne Stroup, Los Angeles, CA, for Defendants.

## ORDER RE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

DOLLY M. GEE, District Judge.

This matter is before the Court on Plaintiffs Kim Allen, Daniele Xenos, Melissa Nigh, Sherrell Smith, Yuanke Xu, Diana Sisti, and Nancy Rodriguez's motion for class certification, filed on May 14, 2012.[1] [Doc. # 60.] On June 15, 2012, Defendants Hyland's Inc. and Standard Homeopathic Company filed an

opposition [Doc. # 74]. On May 18, 2012, Plaintiffs filed a reply. [Doc # 98]. The Court held a hearing on the motion on July 13, 2012. After the hearing, the parties filed substantial supplemental briefing and notices of supplemental authority. [Doc. ## 105, 125, 129, 161, 186, 224, 229, 231, 283, 284, 285, 288.]

Having duly considered the respective positions of the parties, as presented in their briefs and at oral argument, the Court now renders its decision. For the reasons set forth below, Plaintiffs' motion is **GRANTED** in part and **DENIED** in part.

### I.

### FACTUAL BACKGROUND

Defendants produce, market, and sell homeopathic products throughout the United States. (Third Amended Complaint ("TAC") ¶ 15.) Hyland's Inc. maintains its principal place of business in California. (*Id.* ¶ 12.) Defendants' homeopathic products are sold over-the-counter in major retail stores and are often placed alongside non-homeopathic over-the-counter drugs. (*Id.* ¶¶ 22–23.) Defendants market their products as natural, safe, and effective alternatives to prescription and non-homeopathic over-the-counter drugs. (*Id.* ¶ 25.)

Homeopathic remedies are predicated in part on the "principle of dilutions" under which active ingredients are thought to be more effective when they are significantly diluted. (*See id.* ¶ 18.) Homeopathic drugs and their packaging are not reviewed by the Food and Drug Administration ("FDA"). (*Id.* ¶ 25.) The FDA has stated that it is not aware of any scientific evidence that homeopathic drugs are effective. (*Id.* ¶ 27.)

The following twelve of Defendants' homeopathic products are at issue in this litigation: Calms Forté, Teething Tablets, Migraine Headache Relief, ClearAc, Poison Ivy/

---

1. Plaintiffs are apparently willing to dismiss Plaintiff Roger Hutchinson's claims (*see* Opp'n at 4 n. 2; Reply at 21 n. 16 (Hutchinson did not purchase the product identified in the SAC and "has since been withdrawn")), but they have not filed a stipulation to dismiss Hutchinson as a plaintiff. (*See* Opp'n at 4 n. 2.) Since Hutchinson is no longer named as a plaintiff in the TAC, the Court hereby dismisses his claims without prejudice accordingly.

Oak Tablets, Colic Tablets, Leg Cramps with Quinine[2], Leg Cramps, Defend Cold & Cough, Defend Cold & Cough Night, Hyland's Cough, and Seasonal Allergy Relief. (*Id.* ¶¶ 39–185.) Each product's packaging describes the product's medical uses and makes claims about its effectiveness.[3] (*Id.* ¶¶ 44, 62, 73–74, 84–85, 93–94, 102–03, 109–10, 128–29, 146–47, 157–58, 168–69, 179–80.) Most products' packaging asserts that the respective product is "100% Natural." (*Id.* ¶¶ 44, 62, 73, 93, 102, 109, 128, 146, 157, 179.) Other products' packaging asserts that the product is "All Natural" or "Natural." (*Id.* ¶¶ 84, 168.)

2. Plaintiffs allege that Allen purchased Leg Cramps with Quinine (TAC ¶¶ 108, 112), rather than Leg Cramps with Quinine PM—the product they included in their proposed class definition. (*See* Mot. at 2.). As Allen has standing only with respect to the products she purchased, the Court construes Plaintiffs' proposed class definition to include Leg Cramps with Quinine, rather than Leg Cramps with Quinine PM.

3. For example, with respect to the Calms Forté product, Plaintiffs identify the following representations about the product's uses and effectiveness on the product packaging: "Sleep Aid," "For Restless or Wakeful Sleep from Exhaustion," "For Stress, Nervousness or Nervous Headache," "For Drowsiness with Incomplete Sleep," "For Nervous Irritability," "Biochemic Phosphates for Enhancing Cellular Function," "Wake up Rested & Refreshed," and "Relieves Stress to Help you Sleep." (TAC ¶ 44.) Similarly, the packaging on the other products contain representations regarding uses and effectiveness, too numerous to mention here, which are germane to each respective product.

4. Xenos purchased Teething Tablets, ClearAc, and Poison Ivy/Oak Tablets outside the proposed class period. (*Id.* ¶¶ 57, 81, 90.) Allen purchased Teething Tablets and Colic Tablets outside the proposed class period. (*Id.* ¶¶ 59, 99.)

Defendants contend that Xenos lacks standing to bring claims as to Leg Cramps with Quinine PM and Colic Tablets, and Xu lacks standing to bring claims as to Defend Cold & Cough because they testified during their depositions that they did not buy these products. (Opp'n at 3.) Plaintiffs filed the operative Third Amended Complaint after Defendants filed their opposition, and the TAC alleges that Allen, rather than Xenos, purchased Colic Tablets and Leg Cramps with Quinine, and Sisti, rather than Xu, purchased Defend Cold & Cough. (TAC ¶¶ 99, 108, 156.) Thus, Defendants' standing arguments as to these products are moot.

Defendants also contend that Xenos lacks standing to bring claims as to ClearAc and Poison Ivy/Oak because she bought the products

Most of the plaintiffs purchased one or more of Defendants' twelve products in 2008 or thereafter.[4] (*Id.* ¶¶ 40–43, 58, 69–72, 108, 124–25, 144–45, 156, 167, 178.) They purchased the products because they wanted "a more natural alternative to traditional over-the-counter remedies" and they relied, at least in part, on Defendants' representations on the product packaging. (*Id.* ¶¶ 47, 64, 74, 85, 94, 103, 110, 129, 147, 158, 169, 180.)

Plaintiffs allege that the active ingredients in these twelve products are so diluted that the ingredients are "effectively non-existent" and the products are therefore not effective for their intended uses.[5] (*Id.* ¶¶ 45, 52–53,

outside the relevant limitations period. (Opp'n at 3.) Plaintiffs assert that the delayed discovery rule applies to Xenos' claims that would otherwise be barred by the statute of limitations. (*See* TAC ¶¶ 60–61, 82–83, 91–92.) Under the rule, the statute of limitations runs "from the time a reasonable person would have discovered the basis for a claim." *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1295, 119 Cal.Rptr.2d 190 (2002). The Court notes that there appears to be some dispute among California courts as to whether the delayed discovery rule applies to some of Plaintiffs' claims. *See Schramm v. JPMorgan Chase Bank, N.A.*, No. CV 09–9442, 2011 WL 5034663, at *10 n. 5 (C.D.Cal. Oct. 19, 2011) (collecting cases).

Assuming *arguendo* that the delayed discovery rules applies here, Defendants have not demonstrated that Xenos had actual notice of her claims outside the statutory period, and thus, they have not demonstrated that Xenos' claims are barred by the relevant statute of limitations. The Court notes that "[c]ourts have been nearly unanimous ... in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action so long as the necessary commonality and ... predominance are otherwise present." *In re Energy Sys. Equip. Leasing Sec. Litig.*, 642 F.Supp. 718, 752–53 (E.D.N.Y.1986).

5. It is not clear, based on Plaintiffs' briefing, whether Plaintiffs move for class certification based on the theory of liability asserted in their TAC and throughout this litigation—i.e., that the active ingredients in Defendants' products are so diluted as to render the products entirely ineffective, and thus the statements on the product packaging about the products' uses and effectiveness, *taken as a whole,* are misleading—or on the theory that individual statements or omissions on the product packaging are misleading, such as the failure to explain the dilution descriptions and failure to inform consumers that no regulatory body confirms the efficacy statements on the product packaging (*see, e.g.,* Reply at 1)—or both.

63, 75, 86, 95, 104, 111, 131, 148, 160, 171, 182.) The products did not work as advertised. (*Id.* ¶¶ 49, 66, 78, 87, 96, 105, 121, 140.) Products that Defendants represent to be "100% Natural" or "All Natural" contain ingredients that are not "natural," such as synthetic chemicals, synthetically derived or chemically reduced elements, and artificially produced elements. (*Id.* ¶¶ 48, 54, 65, 77, 119, 138, 150–51, 162–63, 173–74, 183.) Some of the products contain dangerous or potentially dangerous ingredients. (*Id.* ¶¶ 115, 118, 120, 135, 137, 139, 152, 164, 175.)

Plaintiffs allege that they would not have purchased Hyland's products absent Defendants' alleged misrepresentations on the product packaging. (*Id.* ¶¶ 50, 67, 79, 88, 97, 106, 122, 141, 153, 165, 176, 184.)

Plaintiffs assert the following claims against Defendants: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ.Code § 1750 *et seq.*; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200 *et seq.*; (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof.Code § 17500 *et seq.*; (4) breach of express warranty; (5) breach of implied warranty of merchantability; (6) violation of the Magnuson–Moss Act, 15 U.S.C. § 2301 *et seq.*; (7) violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann § 501.201 *et seq.*; and (8) violation of Georgia's Uniform Deceptive Trade Practices Act, Ga.Code Ann. § 10–1–370 *et seq.* (TAC ¶¶ 216–87.)

Plaintiffs seek to certify the following nationwide class:

> All purchasers of Hyland's, Inc. and Standard Homeopathic Company's homeopathic Products entitled Calms Forte, Teething Tablets, Migraine Headache Relief, ClearAc, Poison Ivy/Oak Tablets, Colic Tablets, Leg Cramps with Quinine PM, Leg Cramps, Defend Cold & Cough, Defend Cold & Cough Night, Hyland's Cough, and Seasonal Allergy Relief, for personal or household use and not for resale, in the United States from period February 9, 2008 to present (hereinafter referred to as the "Class"). Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is the Court, its staff and officers, and member[s] of their immediate families.

(Mot. at 3.)

In the alternative, Plaintiffs move to certify the following three subclasses [6] (the "California Subclass," "Florida Subclass," and "Georgia Subclass," respectively):

> All persons who purchased Hyland's, Inc.'s and Standard Homeopathic Company's homeopathic products entitled Calms Forte, Teething Tablets, Migraine Headache Relief, ClearAc, Poison Ivy/Oak Tablets, Colic Tablets, Leg Cramps with Quinine PM, Leg Cramps, Defend Cold & Cough, Defend Cold & Cough Night, Hyland's Cough, and Seasonal Allergy Relief within the states of California, Florida,[and] Georgia, . . . for personal or household use and not for resale, at any time on or after February 9, 2008.

(Mot. at 5.)

Plaintiffs Kim Allen, Daniele Xenos, Sherrell Smith, Nancy Rodriguez, Yuanke Xu, Diana Sisti, and Melissa Nigh ask that they be appointed as the representatives of the Class. Plaintiffs request the appointment of the Law Offices of Ronald A. Marron, APLC

---

As Plaintiffs have not identified *sufficient evidence* that any single omission or misrepresentation on the packaging is "material" or "likely to deceive" and have not demonstrated that liability predicated on any single omission or misrepresentation is tethered to a damages model, *see infra*, the Court construes Plaintiffs' briefing to rely only on the theory of liability asserted in their TAC, and certifies the class only on that basis.

6. Plaintiffs allege subclasses according to state citizenship (TAC ¶ 215), with Smith, Xu, Sisti, and Nigh representing the California subclass, Allen and Rodriguez representing the Florida subclass, and Xenos representing the Georgia subclass. (*See id.* ¶¶ 5–11.)

and Kreindler & Kreindler, LLP as class counsel.

## III.

### LEGAL STANDARD

Federal Rule of Civil Procedure 23 provides the standard for certification of a class action. Rule 23 has two sets of requirements. Plaintiffs must meet all of the requirements under Rule 23(a) and must also satisfy at least one of the Rule 23(b) prongs.

■ Courts refer to these requirements by the following shorthand: "numerosity, commonality, typicality and adequacy of representation." *See Mazza v. American Honda Motor Co., Inc.,* 666 F.3d 581, 588 (9th Cir. 2012). Courts have also implied a threshold requirement that plaintiffs seeking class certification must demonstrate that the class is adequately defined and clearly ascertainable. *Wolph v. Acer Am. Corp.,* 272 F.R.D. 477, 482 (N.D.Cal.2011); *see also Berger v. Home Depot USA, Inc.,* 741 F.3d 1061, 1071 n. 3 (9th Cir.2014).

■ If the four prerequisites of Rule 23(a) are satisfied, a court must also find that Plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend,* —— U.S. ——, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013). At issue here is Fed.R.Civ.P. 23(b)(3): "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Rule 23 is more than a pleading standard, and it requires the party seeking class certification to "affirmatively demonstrate his compliance with the Rule." *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (internal quotation omitted). Thus, a court must conduct a "rigorous" class certification analysis. *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Frequently the analysis "will entail some overlap with the merits of the plaintiff's underlying claim," and "sometimes it may be necessary for the court to probe behind the pleadings...." *Id.* (internal quotation omitted). The Supreme Court has recently cautioned courts, however, that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,* —— U.S. ——, 133 S.Ct. 1184, 1195, 185 L.Ed.2d 308 (2013).

## IV.

### DISCUSSION

#### A. *Evidentiary Objections*

The parties have raised voluminous objections to the opposing side's evidence. [Doc. ##76, 81–2, 88, 89, 90, 91, 92, 93, 94, 95, 96, 106, 108, 230.]

The Court addresses the parties' objections *infra* only to the extent it deems necessary. The Court does not address objections pertaining to facts it deems immaterial to the resolution of the motion.

#### B. *Admissibility of Expert Testimony*

■ Both parties seek to admit expert testimony on the issue of whether class certification is appropriate. Federal Rule of Evidence 702 allows expert testimony if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702(a). Rule 702 "require[s] that the judge apply [her] gatekeeping role ... to all forms of expert testimony, not just scientific testimony," and "judges are entitled to broad discretion when discharging their gatekeeping function." *Hangarter v. Provident Life & Acc. Ins. Co.,* 373 F.3d 998, 1017 (9th Cir.2004) (internal quotation marks omitted). The trial court has a "special obligation to determine the relevance and reliability of an expert's testimony." *Elsayed Mukhtar v. California State Univ., Hayward,* 299 F.3d 1053, 1063 (9th Cir.2002), *overruled on other grounds,*

*Estate of Barabin v. AstenJohnson, Inc.,* 740 F.3d 457 (9th Cir.2014).

The Ninth Circuit has noted that under the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny, a court must

> assess [an expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is a flexible one. Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion. In sum, the trial court must assume that the expert testimony both rests on a reliable foundation and is relevant to the task at hand. [¶] Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.

*Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.,* 738 F.3d 960, 969–70 (9th Cir. 2013), *cert. denied,* —— U.S. ——, 134 S.Ct. 644, 187 L.Ed.2d 420 (2013) (internal quotations and citations omitted).

Each party objects to the admission of the opposing party's expert testimony. The Court addresses the objections only insofar as it relies on the evidence at issue in this Order.

■ With respect to the declaration of Plaintiffs' expert, Noel R. Rose, M.D., Ph.D., Defendants argue that Rose is unqualified to offer his opinions because he lacks the required knowledge, skill, experience, training, or education to offer an expert opinion on homeopathy generally and the effectiveness of Defendants' products in particular.[7] [*See* Doc. # 108.] While Rose has not demonstrated that he is an expert in *homeopathy*

specifically, he has demonstrated that he has substantial training and experience in medicine and the treatment of disease generally. [*See* Doc. # 81–1 ¶ 1.] Rose does not purport to offer his opinion as to the appropriate homeopathic remedy in a given situation—which would arguably be the realm of an expert in homeopathy. Rather, he offers his opinion as to the medical or scientific underpinnings of homeopathy in general, based on his review of recent medical literature on the subject. (*See id.* ¶¶ 1, 10–11, 13–14.) Rose has demonstrated that his opinions are sufficiently relevant and reliable to be admissible on this class certification motion. Thus, Defendants' objections to the Rose Declaration are **OVERRULED.**

### C. *Requests for Judicial Notice*

The parties each request that the Court take judicial notice of several documents. (Requests for Judicial Notice ("RJNs") [Doc. ##75, 81–3].) Under Federal Rule of Evidence 201, the Court may take judicial notice of "a fact that is not subject to reasonable dispute" because: (1) it "is generally known within the trial court's territorial jurisdiction"; or (2) it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b).

■ Defendants request that the Court take judicial notice of an August 26, 2011 petition by the "Center for Inquiry" to the FDA, the FDA's acknowledgement of receipt of the petition, and the FDA's February 22, 2012 interim response to the petition.[8] [*See* Doc. # 75.] Defendants have not provided any evidence or analysis demonstrating that the facts of which it seeks judicial notice are "generally known within the district," and thus, the documents are not judicially noticeable on that ground. Nor have Defendants demonstrated that the facts of which it seeks judicial notice "can be accurately and readily

---

7. The Court overrules Defendants' objection to the Rose declaration on the ground that it was untimely filed, given that both parties have subsequently filed additional briefs and evidence with respect to Plaintiffs' class certification motion, there has been no prejudice to Defendants, and the Court has considered all relevant evidence in its determination of this motion.

8. Defendants also request that the Court take judicial notice of certain documents filed in a federal court case [Doc. # 75], but the Court addresses this request *infra.*

determined from sources whose accuracy cannot reasonably be questioned." While many courts in this Circuit take judicial notice of documents *available on government agency websites, see, e.g., Gustavson v. Mars, Inc.,* 13–CV–04537, 2014 WL 2604774, at *3 n. 1 (N.D.Cal. June 10, 2014); *Gustavson v. Wrigley Sales Co.,* 961 F.Supp.2d 1100, 1113 n. 1 (N.D.Cal.2013); *Hansen Beverage Co. v. Innovation Ventures, LLC,* No. 08–1166, 2009 WL 6597891, at *2 (S.D.Cal. Dec. 23, 2009), Defendants have provided no evidence of the source of the documents at issue. Nor have Defendants provided any information about the "Center for Inquiry." Accordingly, Defendants' request for judicial notice of the three documents is **DENIED.**

Plaintiffs request that the Court take judicial notice of what are purportedly two screenshots from pages of the FDA's website. [Doc. # 81–3.] The Court has only been able to verify that one of the two pages—http://labels.fda.gov—is available on the FDA's website. Accordingly, the Court takes judicial notice of the facts on that page, entitled "FDA Online Label Repository." Plaintiffs' judicial notice request is otherwise **DENIED,** as the Court is unable to verify the accuracy of the source of the second page, and Plaintiffs have not provided any evidence of its accuracy.

### D. *Choice of Law*

Plaintiffs seek to certify either a nationwide class under California law or, alternatively, three subclasses of individuals located in California, Florida, and Georgia, under the substantive law of each state. Defendants contend that the Ninth Circuit's decision in *Mazza v. American Honda Motor Co., Inc.,* 666 F.3d 581 (9th Cir.2012), requires that consumer protections claims be brought under the law of the state where the consumer purchased the product at issue. (Opp'n at 1.) Thus, the Court turns first to the choice of law issue.

■ "A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Mazza,* 666 F.3d at 589 (internal quotation omitted). "Under California's choice of law rules, the class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts to the claims of each class member.' " *Id.* (quoting *Wash. Mut. Bank v. Superior Court,* 24 Cal.4th 906, 921, 103 Cal. Rptr.2d 320, 15 P.3d 1071 (2001)). "Such a showing is necessary to ensure that application of California law is constitutional." *Id.* at 589–90. "Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate 'that foreign law, rather than California law, should apply to class claims.' " *Id.* at 590 (quoting *Wash. Mut.,* 24 Cal.4th at 921, 103 Cal.Rptr.2d 320, 15 P.3d 1071).

■ "California law may only be used on a classwide basis if the interests of other states are not found to outweigh California's interest in having its law applied," based on a three-step "governmental interest test":

■ First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.

■ Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.

■ Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Id.* (citing *McCann v. Foster Wheeler LLC,* 48 Cal.4th 68, 81–82, 105 Cal.Rptr.3d 378, 225 P.3d 516 (2010)).

■ Plaintiffs have sufficiently demonstrated that this action is tied to California, such that the application of California law would not be arbitrary or unfair. Defendant Hyland's, Inc.'s principal place of business is California. (TAC ¶ 12; Defendants' Answer ¶ 12 [Doc. # 204].) Indeed, most, if not all,

of the product packaging at issue in this litigation lists the address of Hyland's, Inc. as "Los Angeles, CA 90061." (*See* Resendes Decl., Exh. 4 [Doc. # 60–3].) Defendants have "long maintained substantial manufacturing, distribution, marketing and warehousing operations in Los Angeles, California." (TAC ¶ 15; Defendants' Answer ¶ 15.) Defendants' product formulation, labeling, and marketing decisions occurred in California. (*Id.*) Other district courts in this Circuit have held that the application of California law to non-California residents would not offend the class members' due process rights where the defendant engaged in a substantial amount of business in California. *See Keegan v. American Honda Motor Co., Inc.*, 284 F.R.D. 504, 538–39 (C.D.Cal.2012) (collecting cases).

"When considering fairness in this context, an important element is the expectation of the parties." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (citation omitted). Here, Defendants apparently concede that application of California law would be constitutional, and the focus of their argument is that under the government interest test, application of California law to a nationwide class would be inappropriate. (Defendants' Supp. Memo. at 1 [Doc. # 229].)

■ Turning to the governmental interest analysis, in *Mazza* the Ninth Circuit considered whether California law should apply to consumer protection claims brought by non-California plaintiffs for transactions that took place outside of California. 666 F.3d at 590–94. The district court in *Mazza* had granted class certification and held that California law could be applied to non-resident class members. *Id.* at 588. The Ninth Circuit reversed, holding that the defendant had demonstrated that other states' consumer protection laws materially differed from the law of California, other states had a "strong interest in applying its own consumer protection laws," and California had an "attenuated" interest in applying its law to residents of foreign states. *Id.* at 590–94. In its briefing, the defendant "exhaustively detailed the ways in which California law differs from

the laws of the 43 other jurisdictions in which class members reside." *Id.* at 591.

Defendants contend that under *Mazza* it is *never* possible to certify a nationwide class under California consumer protection laws. (Opp'n at 11, 25.) Yet, district courts in this Circuit have repeatedly rejected such a broad interpretation of *Mazza*. As one district court explained:

> *Mazza* is not a material change in the law, given that: (1) *Mazza* did not and could not change state substantive law articulated by the California Supreme Court; (2) *Mazza* did not and could not overrule Ninth Circuit precedent interpreting state law; and (3) Defendants' interpretation of *Mazza* contradicts the express purpose of the Class Action Fairness Act [ ("CAFA") ].

*Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 543 (C.D.Cal.2012); *see also Forcellati v. Hyland's, Inc.*, No. CV 12–1983, 2014 WL 1410264, at *4 ("Given that Mazza did not categorically rule out application of California law to out-of-state class members, simply citing *Mazza* in no way relieves Defendants of their burden." (internal quotation omitted)).

In short, *Mazza* could not have abrogated the California Supreme Court's instruction that the governmental interest test is a case-by-case determination, with the burden of proof falling in each case on *the proponent of foreign law*—i.e., Defendants in this case. *Bruno*, 280 F.R.D. at 545 (citing *Wash. Mut. Bank*, 24 Cal.4th at 921, 103 Cal.Rptr.2d 320, 15 P.3d 1071, and *Kearney v. Salomon Smith Barney*, 39 Cal.4th 95, 107–08, 45 Cal.Rptr.3d 730, 137 P.3d 914 (2006)). Nor could the decision by a three judge panel in *Mazza* overrule existing Ninth Circuit precedent recognizing that courts applying California choice of law rules must apply the governmental interest analysis. *Id.* at 547–48 (citing *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir.2010)). Finally, if *Mazza* stood for the proposition that all consumer class actions must be adjudicated under the laws of the different states as a matter of law, nationwide consumer class actions would become unmanageable and impossible to certify, and such an outcome would be contrary to

the express purpose of CAFA to "assure fair and prompt recoveries for class members with legitimate claims." *Id.* at 548.

Thus, this Court understands *Mazza*'s holding to be that, under the facts in that case, with the issue fully briefed by the parties, foreign law applied under the governmental interest test. This case, however, involves different facts, and Defendants have not borne their burden of demonstrating that foreign law applies. Defendants assert that *Mazza* and other cases have held that "there is an actual conflict in the consumer protection laws of the various states," but they fail to provide *any case-specific analysis* addressing the differences among the state laws at issue.[9] Rather, Defendants conclusorily assert that the laws of the 50 states are "markedly different" and contend that *Plaintiffs* have not demonstrated otherwise. (*See* Opp'n at 11.) Defendants have also failed to provide case-specific analysis as to the second and third prongs of the governmental interest test, relying instead on *Mazza*. (*See id.* at 10–11.)

Courts in this Circuit have repeatedly rejected such wholesale reliance on *Mazza* as insufficient to meet the defendant's burden under the governmental interest test. *See Bruno*, 280 F.R.D. at 547 ("Defendants [may not] substitute *Mazza*'s holding in lieu of Defendants' own careful analysis of choice-of-law rules as applied to this particular case."); *In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224, 1237 (N.D.Cal.2012) ("[U]nlike the defendant in *Mazza*, Clorox has not explained how differences in the various states' consumer protection laws would materially affect the adjudication of Plaintiffs' claims or otherwise explained why foreign laws should apply. Accordingly, Clorox has failed to meet its burden."); *Forcellati v. Hyland's, Inc.*, 876 F.Supp.2d 1155, 1160 (C.D.Cal.2012)

("Defendants do not even discuss the differences between the consumer protection laws of [different states], let alone address whether these differences are material based on the facts and circumstances of *this* case." (emphasis in original)); *see also Gianino v. Alacer Corp.*, 846 F.Supp.2d 1096, 1100–02 (C.D.Cal.2012) (finding application of California law to other states inappropriate under the governmental interest test only after a "comprehensive nationwide analysis, detailing the significant variations in the states' consumer protection and fraud laws").

Accordingly, as California has the required minimum contacts to satisfy due process, and Defendants have not met their burden to prove that foreign law should apply, California substantive law applies to this action.

### E. *Ascertainability*

■ "Although there is no explicit requirement concerning the class definition in [Rule] 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Wolph*, 272 F.R.D. at 482 (internal quotation omitted). "A class definition should be precise, objective and presently ascertainable," such that it is "administratively feasible to determine whether a particular person is a class member." *Id.* The identity of class members need not, however, be known at the time of class certification. *Id.*

■ Here, Plaintiffs have precisely defined the class based on objective criteria, specifically, the purchase of twelve of Defendants' products that contained alleged misrepresentations during the class period. Given that the alleged misrepresentations appeared on the product packaging, "there is no concern that the class includes individuals

---

9. Indeed, Defendants do not discuss the differences among laws of different states *at all* in their briefing on *Mazza*. (Opp'n at 11.) Instead, they ask the Court to take judicial notice of a document describing differences among state laws filed by *a* defendant in a *different case*. (*See* Opp'n at 10 n. 7; Request for Judicial Notice ("RJN") [Doc. ## 75, 75–1].) The document at issue is properly subject to judicial notice under Federal Rule of Evidence 201(b), as Plaintiffs do not dispute the contents of the document, and

the statutes at issue can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*, 868 F.Supp.2d 1042, 1048 (D.Or.2011) (taking judicial notice of statutes under Rule 201(b)). Nonetheless, the Court declines to use the document to make Defendants' arguments for them with respect to the first prong of the governmental interest test.

who were not exposed to the misrepresentation." *Astiana v. Kashi Company*, 291 F.R.D. 493, 500 (S.D.Cal.2013). District courts in this Circuit have frequently held that similar classes—composed of purchasers of consumer products with allegedly misleading packaging during a specified timeframe—were ascertainable. *See, e.g., Forcellati v. Hyland's, Inc.*, No. CV 12–1983, 2014 WL 1410264, at *5–*8 (C.D.Cal. Apr. 9, 2014); *Astiana*, 291 F.R.D. at 500–01; *Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 535–36 (N.D.Cal.2012).

Defendants note that district courts are not of one mind as to whether classes of purchasers of relatively low-cost consumer products are ascertainable, given that self-identification is generally the only way to identify class members. *See Jones v. ConAgra Foods, Inc.*, No. 12–1633, 2014 WL 2702726, at *9 (N.D.Cal. June 13, 2014) (collecting cases). Defendants cite several cases in which courts held that proposed classes were not ascertainable, most of which are readily distinguishable. For example, in *In re POM Wonderful LLC*, the court held that the proposed class fell on the unascertainable end of the "continuum of ascertainability" where (1) based on the volume of the product sold, every adult in the United States was a potential class member; (2) none of the packaging included the alleged misrepresentations; (3) few consumers were likely to have retained receipts during a class period which closed years before the action was filed. ML No. 10–2199, 2014 WL 1225184, at *6 (C.D.Cal. Mar. 25, 2014).

Here, in contrast, there is no evidence that the class would include tens of millions of class members, the packaging does contain the alleged misrepresentations, and while consumers are unlikely to have retained receipts, the class period continues into the present and consumers are more likely to remember their purchases. In another case Defendants cite, the court held that the class was not ascertainable because determining whether a person belonged to the class required "an intricate, individualized inquiry." *See Henson v. Fid. Nat. Fin. Inc.*, 300 F.R.D. 413, 422, No. 14–1240, 2014 WL 2765136, at *10 (C.D.Cal. June 18, 2014).

There is no such concern in this case where the relevant question is simply whether an individual purchased one of the products at issue during the relevant time period. Finally, in a third case Defendants cite, the court held that the class was unascertainable where there were "literally dozens of varieties" of the products at issue with different labels and ingredients, and only some of those products included the alleged misrepresentations. *Jones*, 2014 WL 2702726, at *10. Here, in contrast, there are twelve products at issue, the products purport to treat distinct ailments, and each product's packaging contains alleged misrepresentations. (*See* Resendes Decl., Exh. 4 [Doc. # 60–3] (product packaging).)

Moreover, while Defendants urge the Court to follow those courts holding that classes in which members are self-identified without corroborating evidence are not sufficiently ascertainable (*see* D's Supp. Briefing at 1–2), the Court is persuaded by the contrary reasoning in *Ries* and *Astiana* that the identity of class members need not be known at the time of class certification. "If class actions could be defeated because membership was difficult to ascertain at the class certification stage, 'there would be no such thing as a consumer class action.'" *Astiana*, 291 F.R.D. at 500 (quoting *Ries*, 287 F.R.D. at 536).

Finally, with leave of the Court, Defendants incorporate by reference their brief on ascertainability in *Forcellati v. Hyland's, Inc.*, a similar case pending in this district. (D's Supp. Brief at 1 [Doc. # 284]; *see also* Case No. CV 12–1983 GHK (MRWx), Doc. ## 133, 137.) Defendants assume that Plaintiffs will identify class members based on self-identification by purchasers of the products at issue, and they argue that such identification deprives them of due process, renders the case unmanageable, and opens Defendants to an unreasonable risk of future litigation. The Court finds persuasive, however, Judge King's thoughtful analysis in his order granting the *Forcellati* plaintiffs' motion for class certification. *See* 2014 WL 1410264, at *5–*8. First, Defendants have no due process interest in the question of class membership because any liability will

be determined in the aggregate with total sales being the measure of damages regardless of the size of the class, and Defendants will have no claim to residual damages. *See id.* at \*6. Second, even assuming *arguendo* that fraudulent or inaccurate claims could result in a pro rata reduction of *class members'* relief, Defendants have identified no case in which any such dilution would undermine the ability of a court to issue a final judgment binding all class members. *See id.* Third, potential manageability problems arising during the damages phase of the class action are properly addressed under Rule 23(b)(3), discussed *infra,* but in any event, the Court retains "the flexibility to address problems with a certified class as they arise, including the ability to decertify." *Id.* at \*7 (internal quotation omitted).

In light of the foregoing, the Court determines that the proposed class is sufficiently ascertainable to warrant certification.

### F. *The Rule 23(a) Factors*

#### 1. *Numerosity*

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). " '[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th Cir. 1964) (quoting *Adver. Specialty Nat'l Ass'n v. FTC,* 238 F.2d 108, 119 (1st Cir.1956)). "In determining whether numerosity is satisfied, the court may consider reasonable inferences drawn from the facts before it." *Balasanyan v. Nordstrom, Inc.,* 294 F.R.D. 550, 558 (S.D.Cal.2013) (citing *Gay v. Waiters' & Dairy Lunchmen's Union,* 549 F.2d 1330, 1332 n. 5 (9th Cir.1977)).

Defendants do not challenge the numerosity factor, and the Court finds that it is easily satisfied given that the putative class action includes consumers of twelve products sold nationwide over the course of several years.

#### 2. *Commonality*

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "[C]ommonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Abdullah v. U.S. Sec. Assocs., Inc.,* 731 F.3d 952, 957 (9th Cir.2013) (internal quotations omitted). "This does not, however, mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single *significant* question of law or fact." *Id.* (internal quotation omitted) (emphasis in original). "The requirements of Rule 23(a)(2) have been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 981 (9th Cir.2011) (internal quotation omitted).

Plaintiffs allege that, contrary to the representations on Defendants' product packaging about the purported uses and effects of the products, the products' active ingredients are so diluted as to render the products entirely ineffective. As Judge King held under similar circumstances in *Forcellati,* "[i]f Plaintiffs can prove that homeopathy is a 'pseudoscience,' as they claim, and that Defendants' products therefore uniformly do not perform as advertised, then the putative class will be entitled to relief under Plaintiffs' warranty and false advertising claims." 2014 WL 1410264, at \*9. Defendants' argument that Plaintiffs have not demonstrated the presence of a common question because they have not submitted evidence that homeopathic remedies are ineffective due to dilution (Opp'n at 13–15) misses the point. At the class certification stage, Plaintiffs need not demonstrate that they are entitled to judgment on the merits of their claims, but rather that their claims raise common questions. As Defendants' own arguments about the efficacy of dilution based on the theory of hormesis demonstrates, the question of whether "extremely low doses" of a substance can "produce real and measurable effects" (*see id.* at 14) is a common question that drives the resolution of this litigation.

Moreover, Plaintiffs have submitted evidence that the principle of dilution has "no rational basis" and that randomized, double-blind controlled trials of homeopathic remedies have "consistently shown no benefit greater than placebo controls" (Rose Decl. ¶¶ 6, 8 [Doc. # 81–1]). The FDA has also stated that it "is not aware of scientific evidence to support homeopathy as effective." (RJN, Exh. 1 [Doc. # 81–3].)

Defendants' additional arguments that Plaintiffs' claims require an analysis of each putative class member's symptoms and the active ingredients of each product, and that Defendants' products are effective for at least some people (Opp'n at 15) are also unpersuasive. If Plaintiffs' theory of the case is correct—i.e., Defendants made material misrepresentations about products which do not work and cannot possibly work as a matter of scientific principle, given the level of dilution of their active ingredients—then consideration of individual users' symptoms and the distinct active ingredients in each product is unnecessary. Moreover, if Plaintiffs' theory is correct, the belief of some users that the products are effective would necessarily be attributable to the placebo effect. Thus, each of Defendants' arguments goes to the merits of Plaintiffs' case, but they fail to demonstrate that Plaintiffs' claims are not subject to common proof.

As the Court has determined that Plaintiffs have met the commonality requirement, Defendants' remaining arguments that various legal and factual issues require individualized analysis are more appropriately considered in the predominance inquiry, *infra.*

### 3. *Typicality*

■ Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175 (9th Cir.2010) (quoting *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Hanon,* 976 F.2d at 508). "Under the rule's permissive standards, representative claims are 'typical' if they are *reasonably coextensive* with those of absent class members; they need not be substantially identical." *Parsons v. Ryan,* 754 F.3d 657, 685 (9th Cir.2014) (internal quotation omitted) (emphasis added). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon,* 976 F.2d at 508 (citations omitted).

■ Defendants contend that various factors including the severity of the named plaintiffs' symptoms, their shopping habits, and their litigiousness render the named plaintiffs atypical of the class. (*See* Opp'n at 20–21.) "In determining whether typicality is met, the focus should be on the defendants' conduct and the plaintiffs' legal theory, not the injury caused to the plaintiff." *Astiana,* 291 F.R.D. at 502 (internal quotation omitted).

■ Injury under California's consumer protection statutes is established by an objective test and does not depend on a consumer's particular state of mind. *Id.; Ries,* 287 F.R.D. at 539. Specifically, under the objective test, "injury is shown where the consumer has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that members of the public are likely to be deceived." *Astiana,* 291 F.R.D. at 502 (internal quotation omitted). Moreover, under California law, a plaintiff need not prove that the defendant's misrepresentation was the only cause, or "even the predominant or decisive factor influencing his conduct." *Id.* (quoting *In re Tobacco II Cases,* 46 Cal.4th 298, 326, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009)). Rather, " 'reliance is proved by showing that the defendant's misrepresentation or nondisclosure was *an immediate cause* of the plaintiff's injury-producing conduct.' " *Id.* (quoting *Tobacco II,* 46 Cal.4th at 326, 93 Cal. Rptr.3d 559, 207 P.3d 20) (emphasis added).

As discussed above, under Plaintiffs' legal theory, the issues Defendants have identified are immaterial. To the extent that the named plaintiffs differ from the absent class members in the ways identified, such differences do not affect their ability to prove that Defendants' products cannot possibly work because the active ingredients are so diluted as to be useless.

To the extent, however, a named plaintiff did not read Defendants' statements on the product packaging of products purchased or explicitly testified that she did not rely on packaging statements, such an individual is *not* typical of the class she seeks to represent. Defendants have identified evidence that three of the named plaintiffs—Rodriguez, Nigh, and Xenos—relied on things other than the product packaging when they decided to purchase Defendants' products. (*See* Opp'n at 20–21.) The Court addresses each of these named plaintiffs in turn.

Defendants introduced evidence that Rodriguez relied on a retail store's advertising in her decision to buy Hyland's Cold & Cough Night. (Rodriguez Depo. at 52:23–25; 53:1–25; 54:11 [Doc. # 78–30].) Plaintiffs responded with evidence that Rodriguez purchased Defend Cough & Cold and Calms Forté due to statements on the products' packaging. (Rodriguez Depo. at 51:18–25; 52:1–25; 53:1–12; 55:21–25; 56:1–4: 57:3–25; 58:1–9, 15–21; 88:7–25; 89:1–9 [Doc. # 192–16].) Accordingly, Rodriguez is typical of the class with respect to Cold & Cough Night.

With respect to Nigh, Defendants contend that she bought the Teething Tablets because there were no other teething remedies available at the store. (Opp'n at 21.) Nigh's deposition testimony demonstrates, however, that she relied at least in part on the product's packaging in her decision to buy the product. (Nigh Depo. at 27:3–17; 28:7–25; 29:1–4 [Doc. # 78–26].) Thus, Nigh is typical of the class with respect to Teething Tablets.

Finally, with respect to Xenos, Defendants introduce evidence that she bought the majority of Defendants' products through a catalogue provided by a cooperative and did not view the packaging in the store at the time of purchase. (Xenos Depo. at 47:7–25; 48:1–25; 51:11–25; 52:1–22 [Doc. # 78–24].) Specifically, Xenos testified that she *could not remember* whether she saw pictures of Defendants' products in the catalogue or whether the catalogue merely provided a list of Hyland's products. (*Id.* at 52:12–22.) Plaintiffs have provided evidence that Xenos relied on the statements made on the product packaging when she purchased Leg Cramps. (Xenos Depo. at 66:13–16 [Doc. # 192–16].) Plaintiffs have not, however, provided any evidence that Xenos relied on product packaging statements when she purchased several other of Defendants' products, specifically, Calms Forté, Teething Tablets,[10] Migraine Headache Relief, ClearAc, and Poison Ivy/Oak Tablets. Indeed, Xenos testified that—with the exception of Teething Tablets—she could not recall if she even *saw* the labels of ClearAc or Poison Ivy/Oak Tablets before buying them.[11] (Xenos Depo. at 58:5–11 [Doc. # 82].) Thus, Xenos is not typical of class members with respect to these products. While other named plaintiffs purchased several of these products, Xenos was the only named plaintiff who Plaintiffs allege purchased ClearAc and Poison Ivy/Oak Tablets. (*See* TAC ¶¶ 81–98.)

In light of the foregoing, Plaintiffs' motion for class certification is **DENIED** to the extent that no named plaintiff typical of the class purchased ClearAc and Poison Ivy/Oak Tablets.[12] The typicality requirement is oth-

---

10. With regard to Teething Tablets, Plaintiffs provided evidence that Xenos relied on the recommendations of other mothers and advertisements for Defendants' products in magazines (Xenos Depo. at 36:3–25; 37:1–18 [Doc. # 192–16]), and that she *saw* the label of Teething Tablets before buying it (Xenos Depo. at 58:9–11 [Doc. # 82]), but they provided no evidence that Xenos *relied* on the product packaging. Nor did Plaintiffs provide any evidence of allegedly false or misleading statements made by Defendants in magazines.

11. While Plaintiffs purport to identify testimony by Xenos that she relied on statements on the packaging of ClearAc and Poison Ivy/Oak Tablets when she purchased them [Doc. # 283–1 at 12–13], Plaintiffs' citations to Xenos' testimony do not support their contention.

12. The Court notes that since Xenos is the only named plaintiff who purchased ClearAc and Poison Ivy/Oak Tablets, and the evidence suggests that Xenos did not rely on the allegedly misleading statements, Plaintiffs have failed to establish

erwise met.[13]

### 4. *Adequacy*

 Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The Ninth Circuit uses a two-prong test to determine whether representation meets the standard: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985 (internal quotation omitted).

### a. *Named Plaintiffs*

 The named plaintiffs—with the exception of Xenos, as discussed *supra*—meet the first requirement of the test. They were exposed to the same alleged misrepresentations as the rest of the class, bought the products at issue, and have the same interest in obtaining relief. Moreover, Defendants have not identified any conflicts of interest between the named plaintiffs and the absent class members. (*See* Opp'n at 21–22.)

With respect to the second prong of the test, Defendants argue that the named plaintiffs will not vigorously prosecute the action on behalf of the class because they are "mere strawmen" for class counsel. (Opp'n at 22.) Specifically, Defendants contend that the named plaintiffs (1) were "solicited" by counsel on a website; (2) some named plaintiffs initially sought refunds or rebates for purchases of homeopathic products; (3) counsel did not contact most of the named plaintiffs about the litigation until after Defendants filed a motion to dismiss the original complaint; and (4) most named plaintiffs did not review or verify the allegations in the com-

plaint prior to the filing of the complaint. (*Id.*)

That Plaintiffs' counsel advertised the litigation on a website, the named plaintiffs desired refunds or rebates, and they joined the litigation after the action was filed do not demonstrate that the named plaintiffs will not vigorously pursue this action on behalf of the absent class. As for the evidence that the named plaintiffs did not review the complaint prior to filing, district courts in this circuit have repeatedly stressed the relatively low level of familiarity a representative plaintiff must have to be meet the Rule 23 adequacy requirement. *See Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D.Cal. 2004) *amended in part*, No. 02–5849, 2012 WL 3070863 (N.D.Cal. July 26, 2012) ("The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim, and will be deemed inadequate only if she is startlingly unfamiliar with the case."); *Keegan*, 284 F.R.D. at 525 ("Individuals are not adequate representatives of a class when it appears that they have abdicated any role in the case beyond that of furnishing their names as plaintiffs." (internal quotation omitted)). Here, there is no indication that the representative plaintiffs are "startlingly unfamiliar" with their case or have "abdicated any role" in it. To the contrary, the representative plaintiffs have made themselves available for depositions and demonstrated familiarity with the case. *See Pryor v. Aerotek Scientific, LLC*, 278 F.R.D. 516, 530 (C.D.Cal.2011) (holding such actions by named plaintiff sufficient to satisfy adequacy requirement). Accordingly, the named plaintiffs, other than Xenos, are adequate to represent the absent class.

---

they have statutory standing to seek class-wide relief with respect to their fraud-based UCL claims as to those products. *See Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 728 (9th Cir.2012) (citing *In re Tobacco II Cases*, 46 Cal.4th at 306, 93 Cal.Rptr.3d 559, 207 P.3d 20) (statutory standing to seek class-wide relief on fraud-based UCL claims requires demonstration that at least one named plaintiff *actually relied* on the allegedly deceptive or misleading statements).

**13.** The Court notes that the TAC alleges that Allen relied on statements on the packaging of Teething Tablets, Colic Tablets, and Leg Cramps with Quinine (*see* FAC ¶¶ 59, 64, 67, 99, 103, 106, 108, 110, 122), and Defendants have not introduced any evidence challenging these allegations. Thus, the Court assumes that Allen is sufficiently typical of the class with respect to these products.

### b. *Plaintiffs' Counsel*

■ The adequacy of counsel is considered under Rule 23(a)(4) and Rule 23(g). *See* Fed.R.Civ.P. 23(g); *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122–23 (9th Cir.2014) (noting that "named plaintiff's and class counsel's ability to fairly and adequately represented unnamed [plaintiffs]" are "critical requirements in federal class actions under Rules 23(a)(4) and (g)"). Defendants contend that class counsel is inadequate because counsel (1) "lured in" the representative plaintiffs using a website advertisement; (2) has been "jockeying" with other attorneys to become lead counsel in this action; (3) has a conflict of interest insofar as counsel represents plaintiffs in parallel litigation against Defendants; (4) has demonstrated—by filing multiple actions against Defendants—"that their true intention is to secure a fee ... not to represent the interests of the class"; and (5) allegedly did not conduct sufficient pre-filing investigation. (Opp'n at 23–24; D's Supp. Brief at 3–5 [Doc. # 125].) The Court notes that attorneys from two law firms—the Law Offices of Ronald A. Marron APLC and Kreindler and Kreindler LLP—represent Plaintiffs, and Defendants' arguments do not distinguish between the two firms, notwithstanding that they are in fact distinct.

Defendants have cited no case—nor is the Court aware of any—that stands for the proposition that advertising class action litigation on a website or attempting to become lead counsel in such an action are grounds for denying a motion for class certification on adequacy grounds.

Defendants note that counsel filed two cases in Los Angeles County Superior Court seeking to represent a class of purchasers of Hyland's products, and one of the cases involved Defend Cold & Cough Night, a product at issue in this action. (D's Supp. Brief at 1 [Doc. # 125]; *see Kahn v. Hyland's, Inc. and Standard Homeopathic Company*,

LASC Case No. BC 488881; *Roemmich v. Hyland's, Inc.*, LASC Case No. BC 487547.) One of the cases—*Roemmich*—was removed to this court, related to a pending case against Defendants, and Plaintiffs' counsel apparently no longer represents the plaintiffs. *See Forcellati v. Hyland's, Inc.*, No. CV 12–1983 (C.D.Cal.).[14] The other case apparently was dismissed on October 4, 2012. *See* Los Angeles County Superior Court Case Summary (last accessed on July 16, 2014).[15]

Defendants also contend that Plaintiffs' counsel has filed "a litany of intervention motions" and a petition for coordination in state court cases pending against Defendants and other homeopathic product providers, purportedly in an attempt to "gain control" over those actions. (D's Supp. Brief at 2.) Defendants have not provided any information about the outcome of those motions that would suggest Plaintiffs' counsel currently is engaging in parallel representation.

Several courts have considered whether parallel representation constitutes a conflict of interest that could render counsel inadequate, with some courts concluding that it does and others concluding that any conflict is speculative. *See In re Joint E. & S. Dist. Asbestos Litig.*, 133 F.R.D. 425, 431–32 (E.D.N.Y.1990) (collecting cases). Defendants cite two district court cases in which courts held that parallel representation created a conflict of interest because of specific concerns that the defendant's assets would be insufficient to satisfy potential judgments in favor of the plaintiff class and the plaintiffs in the parallel litigation—specifically, the defendant company was defunct or the class sought tens of millions of dollars. *See Jackshaw Pontiac, Inc. v. Cleveland Press Pub. Co.*, 102 F.R.D. 183, 192 (N.D.Ohio 1984); *Sullivan v. Chase Inv. Servs. of Boston, Inc.*, 79 F.R.D. 246, 258 (N.D.Cal.1978). Here, in contrast, Hyland's, Inc. is not defunct and Plaintiffs seek damages in the amount of

14. The Court takes judicial notice of facts on the docket for Case No. CV 12–1983 (C.D. Cal.), as the facts can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed.R.Evid. 201(b)(2) & (c)(1).

15. The Court takes judicial notice of facts on the publicly available docket for Case No. BC 488881 on the Los Angeles County Superior Court website, as the facts can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed.R.Evid. 201(b)(2) & (c)(1).

restitution of the purchase price of the twelve products at issue and restitutionary disgorgement of Defendants' profits gained from class members in connection with the sale of the products. (*See* TAC at 61–62 (Prayer for Relief).) These cases are thus distinguishable, and Defendants have provided no analysis to suggest otherwise. A third district court case Defendants cite relied upon the reasoning of *Jackshaw* and *Sullivan* to reach a broader conclusion, namely, that "[e]very decision to hasten or delay the litigation on behalf of one set of plaintiffs could alternately harm or benefit the other set of plaintiffs." *Kurczi v. Eli Lilly & Co.,* 160 F.R.D. 667, 679 (N.D.Ohio 1995).

While parallel representation does present some cause for concern, Plaintiffs' counsel apparently no longer represent plaintiffs in parallel litigation. (*See* P's Supp. Brief at 10 n. 4 [Doc. # 224].) Moreover, even if they did, the Court finds persuasive the reasoning in *Sheftelman v. Jones,* 667 F.Supp. 859, 865 (N.D.Ga.1987), in which the court held that any potential conflict of interest was "very speculative" where a conflict would require the following confluence of circumstances: (1) the parallel case to be certified as a class action, (2) the plaintiffs in both cases to obtain favorable judgments, and (3) the defendants to be unable to satisfy the judgments. The *Sheftelman* court also noted that procedural safeguards, such as the need for the court to approve any settlement, mitigated any concerns about conflict. *Id.* In light of the foregoing, the Court concludes that, in this case, the specter of a conflict of interest is too speculative to warrant denying Plaintiffs' class certification motion on adequacy grounds.

Defendants' argument that Plaintiffs' counsel is simply pursuing fees and attempting to increase costs for Defendants is conclusory and fails to demonstrate that Plaintiffs' counsel has a conflict of interest or will fail to vigorously pursue this action on behalf of the class.

Finally, Defendants' contention that Plaintiffs conducted "little to no investigation" into

the specific factual allegations supporting the claims of added class members (Opp'n at 23–24) is overblown. While Defendants have identified inconsistencies in the pleading, these errors do not outweigh counsel's otherwise vigorous litigation of this action. Although Plaintiffs' counsel at times appear to have bitten off more than they could chew with respect to the twelve products at issue and did not always provide the Court with relevant citations to the record as they should have, that neither shows a conflict of interest nor negates their vast experience in litigating class actions.[16] Accordingly, the Court finds that Plaintiffs' counsel have satisfied the adequacy requirement.

### G. *Rule 23(b)(3) Requirements*

 Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir.1998) (internal quotations omitted). Rule 23(b)(3) requires two different inquiries, specifically determinations as to whether: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). A court evaluating predominance and superiority must consider: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." *Id.*

#### 1. *Predominance*

 "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v.*

---

16. Defendants do not meaningfully dispute that Plaintiffs' counsel meet the Rule 23(g)(1) & (4) factors, and the Court finds that they do. (*See*

Marron Decl. ¶¶ 3–25 [Doc. # 60–2]; Nelson Decl. ¶¶ 3–6 [Doc. # 60–4]; *id.*, Exhs. 1–2.)

*Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). There is substantial overlap between the Rule 23(a)(2) commonality test and the Rule 23(b)(3) predominance tests, but the Rule 23(b)(3) test is "far more demanding." *Wolin,* 617 F.3d at 1172 (quoting *Amchem,* 521 U.S. at 623–24, 117 S.Ct. 2231). The "focus is on the relationship between the common and individual issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 571 F.3d 953, 957 (9th Cir.2009) (internal quotation omitted). "[T]he common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.,* 741 F.3d 1061, 1068 (9th Cir.2014) (internal quotation, brackets and alteration omitted).

To determine whether questions of law or fact common to class members predominate, the Court must analyze each of Plaintiffs' claims separately. *Id.*

### a. *UCL and FAL Claims*

■■■ As a threshold matter, to establish statutory standing to seek class-wide relief for fraud-based UCL claims, Plaintiffs must demonstrate that at least one of the named plaintiffs actually relied on Defendants' allegedly deceptive or misleading statements. *Gutierrez v. Wells Fargo Bank, NA,* 704 F.3d 712, 728 (9th Cir.2012) (citing *In re Tobacco II Cases,* 46 Cal.4th at 306, 93 Cal.Rptr.3d 559, 207 P.3d 20). To meet the reliance requirement, the allegedly deceptive or misleading statement need not be the *only* cause for the plaintiffs' purchase of the products,

but it must be "an immediate cause" of their purchase. *In re Tobacco II Cases,* 46 Cal.4th at 326, 93 Cal.Rptr.3d 559, 207 P.3d 20. Defendants challenge the standing of various named plaintiffs. [Doc. # 288 at 1–2, 288–1.] As Plaintiffs need only demonstrate that *one* named plaintiff actually relied on the statements on each product's packaging, *Gutierrez,* 704 F.3d at 728, the Court only addresses standing insofar as Plaintiffs have failed to demonstrate [17] that *any* named plaintiff actually relied on the statements on a given product's packaging.

With respect to Teething Tablets, Colic Tablets, and Leg Cramps with Quinine,[18] the only named plaintiff alleged to have purchased the products is Allen.[19] Plaintiffs have produced evidence that Allen relied on statements on the Teething Tablets packaging in her decision to buy the product. (Allen Depo. at 27:3–25; 28:1–25; 29:1–4 [Doc. # 86].) Plaintiffs have failed, however, to identify evidence that Allen actually relied on the representations on the product packaging of Colic Tablets and Leg Cramps with Quinine. In the four pages of Allen's deposition transcript provided by Plaintiffs [*see* Doc. # 192–16 at 25–28; *see also* Doc. # 283–1 at 13, 19], Allen does not mention any of these products by name, nor does she testify that she relied on any statements on their packaging in her decision to purchase them. Thus, Plaintiffs have failed to demonstrate that Allen or any named plaintiff has standing to seek class-wide relief for the fraud-based UCL claims as to Colic Tablets and Leg Cramps with Quinine.[20]

---

17. Plaintiffs contend that they are merely required to *allege* that named plaintiffs relied on product packaging in order to demonstrate standing under the UCL. [*See* Doc. # 283 at 1 (quoting *Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1104 (9th Cir.2013)).] *Hinojos* addressed the standard for demonstrating standing *on a motion to dismiss under Rule 12,* not on a motion for class certification. *See Hinojos,* 718 F.3d at 1101–03. As discussed, *supra,* the Supreme Court recently held that plaintiffs seeking class certification "must ... satisfy *through evidentiary proof* at least one of the provisions of Rule 23(b)." *Comcast,* 133 S.Ct. at 1428 (emphasis added).

18. As discussed, *supra,* Allen is alleged to have purchased Leg Cramps with Quinine, not Leg Cramps with Quinine PM. (TAC ¶ 108.)

19. The TAC also alleges that Xenos purchased Teething Tablets, but Plaintiffs have failed to demonstrate that Xenos has statutory standing for the reasons discussed, *supra.*

While Plaintiffs contend in their reply that Nigh also purchased Teething Tablets, this is not clearly alleged in their TAC and Plaintiffs have not provided the Court with the pages from Nigh's deposition in which Nigh purportedly discusses her purchase. (*See* Reply, Exh. A.) Thus, the Court cannot verify that Nigh relied on the statements on the packaging of Teething Tablets in making a decision to buy the product.

20. While Defendants contend that Plaintiffs have also failed to demonstrate that any named plaintiff actually relied on the statements on the Defend Cold & Cough packaging [Doc. # 288 at 1], the Court disagrees. Sisti testified at her deposi-

Turning to the substance of the claims, the UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.Code § 17200. The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. An FAL violation necessarily constitutes a violation of the UCL. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir.2008) (citing *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296, 45 P.3d 243 (2002)).

Because the UCL is intended to deter unfair business practices expeditiously and the scope of remedies under it is limited, "relief under the UCL is available without individualized proof of deception, reliance and injury.'" *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir.2011) (quoting and citing *In re Tobacco II Cases*, 46 Cal.4th 298, 93 Cal.Rptr.3d 559, 207 P.3d 20). To state a claim under the UCL based on false advertising or promotional practices, a plaintiff need only "show that members of the public are likely to be deceived" by the defendant's conduct. *In re Tobacco II Cases*, 46 Cal.4th at 312, 93 Cal.Rptr.3d 559, 207 P.3d 20. "'Likely to deceive' ... indicates that the ad[vertisement] is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508, 129 Cal.Rptr.2d 486 (2003). The FAL uses the same standard as the UCL. *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir.2014) (citing *In re Tobacco II Cases*, 46 Cal.4th at 312, 93 Cal.Rptr.3d 559, 207 P.3d 20).

Plaintiffs have demonstrated that their UCL and FAL claims are subject to classwide proof. Plaintiffs provide evidence that Defendants used similar types of representations on the packaging of each of the twelve products, and the packaging of each individual product remained uniform during the class period. (Resendes Decl. ¶ 6; *id.*, Exh. 4 [Doc. # 60–3].) Thus, the record supports a finding that all class members

tion that she relied on the statements on the product's packaging. (Sisti Depo. at 56:11–25;

were exposed to the same alleged misleading statements by Defendants. Plaintiffs contend that *all* of Defendants' representations on the product packaging were deceptive because the products are so diluted that they cannot possibly perform as advertised. (*See* Mot. at 15–16.) It strains credulity to suggest that a "significant portion of the general consuming public or of targeted consumers" do not rely—at least *in part*—on representations about the products' uses and effectiveness on product packaging when buying the products.

Defendants' arguments to the contrary are unavailing. First, Defendants argue that individual factual issues predominate because there are twelve different products at issue and different proof will be required to challenge the efficacy of each. (Opp'n at 14–15, 26; D's Supp. Briefing at 2 [Doc. # 229].) This argument misses the point. Plaintiffs do not challenge the efficacy of the products in isolation. Rather, they assert that all the products—due to the high rates of dilution of their active ingredients—cannot possibly be effective. Similarly, Defendants' contentions that the twelve products have different rates of dilution and that the products work for some people (*id.* at 27) miss the mark. As in *Forcellati*, Plaintiffs' legal theory centers on "the products' homeopathic preparation and lack of scientific testing, *not* their individual ingredients." 2014 WL at 1410264, at *11 (emphasis added). The product packaging demonstrates that the active ingredients in each of the products are indeed diluted. (*See* Resendes Decl., Exh. 4.) Given Plaintiffs' legal theory that such dilution levels result in products with only trace amounts, if any, of active ingredients, the particular dilution level of each product is largely unimportant. As discussed *supra*, Plaintiffs have submitted evidence that homeopathic remedies in general have no more than a placebo effect. (*See* Rose Decl. ¶¶ 4–15.) While Defendants may be able to prove at the merits stage, through experts meeting the *Daubert* standard, that the different dilution levels result in the products having different levels of

57:1–7 [Doc. # 192–16].)

efficacy and/or that the products are effective for some people, such evidence would demonstrate the invalidity of Plaintiffs' claims, *not* the absence of common questions.

Defendants also argue—citing a survey that looks at consumers' *primary* motivation for purchasing their products—that consumers buy the products for "many reasons" other than Defendants' advertising and representations (Opp'n at 16–17, 26; D. Supp. Briefing at 2–3 [Doc. # 229]; *see* Cristofaro Decl. ¶ 6 [Doc. # 78–4]).[21] Defendants' survey does not consider *all* the reasons why consumers purchase the products, and thus does not address the relevant legal question. *See In re Tobacco II Cases*, 46 Cal.4th at 328, 93 Cal.Rptr.3d 559, 207 P.3d 20 ("[W]hile a plaintiff must allege that the defendant's misrepresentations were *an immediate cause* of the injury-causing conduct, the plaintiff is *not required to allege that those misrepresentations were the sole or even the decisive cause* of the injury-producing conduct." (emphasis added)).[22]

 Finally, Defendants dispute Plaintiffs' assertion that class members relied on the "100% Natural" label on some of the products when purchasing those products. (D's Supp. Briefing at 3–4 [Doc. # 229].) Several courts have declined to certify classes in whole or in part where the plaintiffs brought claims under the UCL, FAL, and CLRA based on a theory that the representation that products were "All Natural" or "100% Natural" was misleading. *See Astiana*, 291 F.R.D. at 507–09 (narrowing proposed class before certifying); *ConAgra Foods*, 2014 WL 2702726, at *14–*17 (declining to certify subclasses). The *Astiana* and *ConAgra* courts noted that the plaintiffs had not demonstrated that "natural" has a definite meaning that would exclude any of the ingredients at issue, nor had they demonstrated that class members relied on the "natural" labelling statements at issue. *See id.* Here, Plaintiffs similarly have not demonstrated that "natural" has a fixed meaning, nor have they introduced evidence that "a significant portion of the general consuming public or of targeted consumers" would rely on the "natural" label. Thus, certification is not appropriate based on their "100% Natural" theory.[23]

### b. *CLRA Claim*

 The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ.Code § 1770(a). To bring a CLRA claim, a plaintiff must " 'show not only that a defendant's conduct was deceptive but that the deception caused [him] harm.' " *Stearns*, 655 F.3d at 1022 (quoting *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 129, 103 Cal.Rptr.3d 83 (2009)). Thus, the CLRA differs from the UCL because it requires that each class member have an actual injury caused by the practice declared to be unlawful by the CLRA. *Id.* (citation omitted). "But, '[c]ausation, on a classwide basis, may be established by *materiality*. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.' " *Id.* (quoting *In re Vioxx*, 180 Cal.App.4th at 129, 103 Cal. Rptr.3d 83) (emphasis in original). A misrepresentation or omission is material if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Id.* (citation omitted). "[M]ateriality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find

---

21. As the Court does not rely on the survey and Cristofaro Declaration, it does not address Plaintiffs' evidentiary objections to these documents. [*See* Doc. # 91.]

22. Defendants also contend that variations in state law predominate. (Opp'n at 25–26.) As the Court rejected Defendants' argument that California law does not apply to the entire class, *supra*, Defendants' argument about different state laws is moot.

23. The Court declines to address Plaintiffs' late-asserted theory that certain of the products are unlawful and they are entitled to class certification of their UCL claims on that basis. [*See* Doc. # 224 at 4–5.] Plaintiffs discussed this theory in a page of briefing, and have provided *no* analysis as to whether members of the public are "likely to be deceived" by Defendants' alleged misrepresentations or omissions at issue. The Court gives as short shrift to Plaintiffs' arguments as they do, and declines to make their arguments for them.

that a reasonable man would have been influenced by it." *Id.* (citation omitted). "If the misrepresentation or omission is not material as to all class members, the issue of reliance would vary from consumer to consumer and the class should not be certified." *Id.* at 1022–23 (internal quotation omitted).

■ For the same reasons discussed above, Plaintiffs have sufficiently demonstrated that Defendants' alleged misrepresentations about the uses and effectiveness of the products are material, and thus, that causation can be established on a classwide basis.

### c. Breach of Express Warranty Claim

■ The California Commercial Code provides that express warranties are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates and express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

*Weinstat v. Dentsply Intern., Inc.*, 180 Cal. App.4th 1213, 1227, 103 Cal.Rptr.3d 614 (2010) (quoting Cal. Com.Code § 2313(1)(a) & (b)). "[T]o prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Id.* (internal quotations omitted). "The statute ... creates a presumption that the seller's affirmations go to the basis of the bargain." *Id.* The "basis of the bargain" includes "[a]ny affirmation, once made ... unless there is clear affirmative proof that the affirmation has been taken out of the agreement." *Id.* at 1229, 103 Cal. Rptr.3d 614 (internal quotation omitted).

■ Under California law, a plaintiff asserting a breach of express warranty claim must stand in vertical contractual privity with the defendant—that is, the buyer and seller must be "in adjoining links of the distribution chain." *Clemens v. Daimler-Chrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir.2008) (citations omitted). One exception to the general rule is where "the purchaser of a product relied on representations made by the manufacturer in labels or advertising material." *Id.*; *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 696, 268 P.2d 1041 (1954).

■ Here, each of the elements is subject to common proof. Plaintiffs allege that Defendants represented that the products would be effective at treating various ailments, and such representations on the product packaging formed part of the basis of the bargain. Plaintiffs allege that for the reasons discussed above, Defendants' warranty about the effectiveness of their products was breached. Finally, Plaintiffs need not demonstrate vertical privity because the exception applies.

### d. Breach of Implied Warranty of Merchantability Claim

■ The California Commercial Code also "implies a warranty of merchantability that goods '[a]re fit for ordinary purposes for which such goods are used.'" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir.2009) (quoting Cal. Com.Code § 2314(2)(c)). "The implied warranty 'provides for a minimum level of quality.'" *Id.* (quoting *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App.4th 1291, 1296, 44 Cal.Rptr.2d 526 (1995)). "A breach of the warranty of merchantability occurs if the product lacks 'even the most basic degree of fitness for ordinary use.'" *Id.* (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal.App.4th 402, 406, 7 Cal.Rptr.3d 546 (2003)). Under California law, an action for a breach of an implied warranty also requires that the plaintiff be in vertical privity with the defendant, *Clemens*, 534 F.3d at 1023, but the exception to privity discussed *supra* does not apply.[24] *Burr*, 42 Cal.2d at 696, 268 P.2d 1041.

24. There is some ambiguity in the case law as to the circumstances under which the exception to

vertical privity applies. While the Ninth Circuit in *Clemens* implies that the exception to vertical

■ Plaintiffs have not adequately demonstrated that common issues of fact and law predominate with respect to this claim, given that each class member will be required to demonstrate that he or she is in vertical privity with Defendants. Moreover, the allegations in the operative complaint suggest that class members bought the products in retail stores, and thus, they are not in vertical privity with Defendants. (*See* TAC ¶ 23 ("Most consumers ... purchase homeopathic drugs in the OTC aisles of retail stores ....").) In light of the foregoing, the Court concludes that Plaintiffs have not met the predominance requirement with respect to their breach of implied warranty claim.

### e. *Magnuson–Moss Act Claim*

■ The Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, regulates warranties on consumer goods. As the Court has discussed in a previous Order, the MMWA directly applies to written warranties which relate to the nature of the material or workmanship and certify products as defect-free or meeting a specific level of performance over a specific period of time. 15 U.S.C. § 2301(6)(A); [*see* Doc. # 197 at 5–7.] Plaintiffs have clearly alleged the specific statements that they contend constitute warranties under the MMWA. (TAC ¶ 263.) To the extent that Plaintiffs contend that Defendants' products are not effective for anyone, the question of whether Defendants have violated the MMWA is subject to common proof and common questions predominate.

■ The MMWA also provides a federal cause of action for state law warranty claims. *Birdsong,* 590 F.3d at 958. The substantive elements under the MMWA are the same as under state warranty law. *Id.* (citations omitted). Because Plaintiffs have demonstrated that common questions predominate with respect to their state law express warranty claim, the same analysis applies to their MMWA claim.

privity based on written labels or advertisements of a manufacturer can apply to breach of implied warranty claims, *see Clemens,* 534 F.3d at 1023, the California Supreme Court case it cited for this proposition explicitly held that the exception

### f. *Damages*

■ Defendants contend that damages are not subject to class-wide proof, implying that such individualized inquiries defeat predominance. (Opp'n at 27; D's Supp. Briefing at 6–7 [Doc. # 229].) As an initial matter, to the extent that Defendants argue that Plaintiffs have failed to show that they suffered an actual injury (*see* Opp'n at 18–19, 27), the Court has already addressed this issue and held that "Plaintiffs need only show *economic* injury resulting from Defendants' allegedly false or misleading advertising. Allegations that Plaintiffs purchased Defendants' products to obtain certain advertised health benefits but that the products failed to deliver these benefits would certainly suffice to show injury." [Doc. # 80 at 2 (emphasis in original) (internal citation omitted).] Moreover, insofar as Defendants contend that any injury is not subject to common proof because of the need to consider "any coupons, rebates, sales, refunds, or credits" used by Plaintiffs, and thus predominance is not established (Opp'n at 19), they are incorrect. The amount of damages "is invariably an individual question and does not defeat class action treatment." *Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 513–14 (9th Cir.2013).

■ Nonetheless, in order to satisfy the predominance requirement, Plaintiffs must present a damages model that is consistent with their liability case, and the Court "must conduct a rigorous analysis to determine whether that is so." *Comcast,* 133 S.Ct. at 1433 (internal quotations and citations omitted); *see Leyva,* 716 F.3d at 514 ("[P]laintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability[.]") Here, Plaintiffs have demonstrated that their damages model is consistent with their theory that Defendants are liable because the products' active ingredients are too diluted—across the board as to all the affected products—to be effective. Specifically, Plaintiffs seek restitution of the purchase price of the products. Restitution or out-of-pocket costs

for representations made on labels or advertisements "[is] applicable *only* to express warranties." *Burr,* 42 Cal.2d at 696, 268 P.2d 1041 (emphasis added). Plaintiffs have not provided any contrary authority.

can be "readily calculated using Defendants' sales numbers and an average retail price." *Ortega v. Natural Balance, Inc.,* 300 F.R.D. 422, 430, No. CV 13–5942, 2014 WL 2782329, at \*6 (C.D.Cal. June 19, 2014).

Plaintiffs' contention that they are entitled to full restitution is linked to their theory that the products they paid for are worthless because they did not provide any of the advertised benefits and had no ancillary value. *See id.* Defendants' argument that Plaintiffs' damages model "fails to account for the benefit that consumers do obtain from the products" (D's Supp. Brief at 2–3 [Doc. # 288]), demonstrates a fundamental misunderstanding of Plaintiffs' liability theory.[25] Plaintiffs' theory is that the products are *entirely* ineffective and thus any purported "benefit" customers experience can be attributed to the placebo effect.[26] Accordingly, Plaintiffs' damages theory—predicated on the notion that class members are entitled to full restitution for products with no value—is consistent with Plaintiffs' liability theory.

In light of the foregoing, Plaintiffs have met the predominance requirement with respect to their theory that the products are worthless because they are ineffective.

### 2. *Superiority*

■ "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin,* 617 F.3d at 1175–76 (citation omitted). In cases in which the plaintiffs seek to recover relatively small sums and the disparity between litigation costs and the recovery sought may render plaintiffs unable to proceed individually, "[c]lass actions may permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th Cir. 2001) (internal quotation and alteration omitted).

■ Here, each class member's claim for restitution involves a small sum of money, and the litigation costs would render individual prosecution of claims prohibitive. Moreover, as discussed *supra,* common issues of fact and law predominate. Courts considering similar cases routinely find that the class action device is superior to other forms of adjudication. *See, e.g., Ortega,* 300 F.R.D. at 430, 2014 WL 2782329, at \*7; *Astiana,* 291 F.R.D. at 507; *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 379 (N.D.Cal. 2010).

Defendants contend that the class action device is not superior, raising several of the arguments the Court has already rejected. (Opp'n at 27–29.) The Court finds such arguments unpersuasive for the reasons already discussed *supra.* Defendants also contend that the superiority requirement is not satisfied because Defendants have created a "comprehensive system to respond to customer complaints," the system provides refunds upon request, and Plaintiffs have not "even attempted to contact Defendants for refunds, instead opting to file lawsuits." (*Id.* at 30.) The only support Defendants provide

---

**25.** Defendants' citations to unpublished district cases involving *food* products (D's Supp. Briefing at 3) are readily distinguishable because food products have some *inherent nutritional value,* and thus, the products were not worthless. Here, in contrast, Defendants' *medicinal* products have no inherent nutritional value, and to the extent that they are ineffective at their stated purposes, they have no value whatsoever.

**26.** While Defendants argue that some customers may have received a "benefit" from the placebo effect and thus are not entitled to damages, they have cited no authority for this proposition, nor is the Court aware of any. It stands to reason

that a product that, in effect, has tricked people into thinking that they received a benefit should not be given credit for actually conferring a benefit. At least two other district courts in this Circuit have found the superiority requirement satisfied where the plaintiffs sought full restitution for allegedly worthless products. *See Ortega,* 300 F.R.D. at 429–30, No. 13–5942, 2014 WL 2782329, at \*6; *Forcellati,* No. 12–1983, 2014 WL 1410264, at \*11–\*12. While these courts did not explicitly address the "value" of the placebo effect, their analysis assumes that *all* customers who receive worthless products are entitled to full refunds. The Court finds this analysis persuasive.

for their contention that a private mechanism providing refunds can be "superior" within the meaning of Rule 23(b)(3) to the class action device is an out-of-circuit district court case, the reasoning of which was rejected by the Seventh Circuit. *See In re Aqua Dots Prods. Liability Litig.*, 654 F.3d 748, 751 (7th Cir.2011) (privately-administered recall of product did not constitute superior method for "adjudicating" controversy, as required by Rule 23(b)(3)).

As the plain text of Rule 23(b)(3) requires the Court to determine whether "a class action is superior to other available methods for fairly and efficiently *adjudicating* the controversy," Fed.R.Civ.P. 23(b)(3) (emphasis added), and Defendants have identified no superior adjudication method, the Court finds that the superiority requirement is satisfied.

### H. *Rule 23(b)(2) Requirements*

Plaintiffs contend "in the alternative" that they are entitled to certification of the class under Rule 23(b)(2). (*See* Mot. at 22–23.) As the Court certifies the class under Rule 23(b)(3), it need not consider Plaintiffs' argument in the alternative.

## V.

### CONCLUSION

In light of the foregoing, Plaintiffs' Motion for Class Certification is **GRANTED** as follows:

1. The Court certifies the following Class with respect to Plaintiffs' claims under the CLRA, UCL, FAL, MMWA, and breach of express warranty:

All purchasers of Hyland's, Inc. and Standard Homeopathic Company's homeopathic Products entitled Calms Forté, Teething Tablets, Migraine Headache Relief, Colic Tablets, Leg Cramps with Quinine, Leg Cramps, Defend Cold & Cough, Defend Cold & Cough Night, Hyland's Cough, and Seasonal Allergy Relief for personal or household use and not for resale, in the United States from the period of February 9, 2008 to the present (the "Class Period").

Excluded from the Class are (1) governmental entities; (2) Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries and assigns; (3) the judicial officers and their immediate family members and associated court staff assigned to this case; and (4) individuals who have fraud-based UCL claims with respect to Colic Tablets and Leg Cramps with Quinine.

2. Plaintiffs' motion is otherwise **DENIED**;

3. The Court certifies Kim Allen, Daniele Xenos (as to Leg Cramps only), Sherrell Smith, Nancy Rodriguez, Yuanke Xu, Diana Sisti, and Melissa Nigh as the representatives of the Class;

4. The Court certifies the following law firms as class counsel: Law Offices of Ronald A. Marron and Kreindler & Kreindler, LLP; and

5. Roger Hutchinson's claims against Defendants are dismissed without prejudice.

**IT IS SO ORDERED.**